[No. 51222-1. En Banc. June 4, 1987.]

PATTI BAILEY, *Petitioner,* v. THE TOWN OF FORKS, *Respondent.*

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* by *John R. Connelly, Jr.,* for petitioner.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Sidney R. Snyder, Jr.,* for respondent.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington Trial Lawyers Association, amici curiae for petitioner.

UTTER, J.—Patti Bailey suffered serious injury when a motorcycle on which she was a passenger collided with a truck. She filed a complaint against the Town of Forks,

alleging her injuries directly and proximately resulted from a town police officer's failure to prevent a man he knew to be heavily intoxicated from driving a truck. The trial court dismissed the complaint on a motion for judgment on the pleadings under CR 12(c). The Court of Appeals, relying on the "public duty doctrine," affirmed dismissal. *Bailey v. Forks,* 38 Wn. App. 656, 688 P.2d 526 (1984). Although the wisdom and continued viability of the public duty doctrine remains a subject of debate, resolution of this case does not require us to reach any conclusions as to its continued application. Ms. Bailey's allegations fit within one of our recognized exceptions to the public duty doctrine. Consequently, we reverse and remand for trial.

Forks moved for judgment on the pleadings and therefore admits, for the purposes of the motion, the truth of every fact well pleaded by Ms. Bailey. *See Pearson v. Vandermay,* 67 Wn.2d 222, 407 P.2d 143 (1965). Accordingly, we consider whether the facts alleged in the complaint, Bailey's only pleading, establish a basis for liability.

Her complaint alleges the following:

2. *Accident.* On or about August 5, 1979, at approximately 2:10 a.m., on the Bogachiel Road, about five miles from Forks, Washington, an automobile–motorcycle collision occurred when a pickup truck driven by Harvey Medley made an illegal left turn in front of the motorcycle driven by Paul W. Peterson. Mr. Peterson was fatally injured and his passenger, plaintiff Patti Bailey, was seriously and permanently injured.

3. *Harvey Medley Intoxication.* Harvey Medley was intoxicated at the time of the accident.

4. *Defendant's Knowledge of Medley's Condition.* Mike Riddle, a duly authorized police officer and agent of the Town of Forks, was in official contact with Harvey Medley shortly before the above–described accident regarding Medley's involvement in an altercation at or near the Vagabond Lounge. Officer Riddle, as an agent of the Town of Forks, and while operating within the scope of that agency, knew or should have known that Harvey Medley was intoxicated to such an extent as to be physically and legally unfit to drive his pickup truck and therefore, a hazard to other users of the highways. Nev-

ertheless, Officer Riddle ordered Harvey Medley to leave the area and personally observed him enter his truck "behind the wheel".

Clerk's Papers, at 22–23.

Relying on these facts, Bailey further alleged that the officer was negligent "in failing to prevent Harvey Medley from driving his vehicle while obviously impaired by intoxication." Clerk's Papers, at 23.

Municipalities in this state are no longer broadly protected by the shield of sovereign immunity. In 1967, by adopting RCW 4.96.010, the Legislature decreed that municipal corporations "shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers . . . to the same extent as if they were a private person or corporation . . ." This statute, however, does not render the State liable for all official misconduct. At some point, tort liability ends and governing begins. *See King v. Seattle,* 84 Wn.2d 239, 243, 525 P.2d 228 (1974); *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 253, 407 P.2d 440 (1965). Because judicial abstention is required where the responsibility for "*'basic policy decisions* has been committed to coordinate branches of government", discretionary policymaking decisions remain protected from suit. *King v. Seattle,* 84 Wn.2d at 246. Discretionary decisions by police officers in the field, however, are not immune. *Bender v. Seattle,* 99 Wn.2d 582, 590, 664 P.2d 492 (1983).

Forks argues, and the Court of Appeals agreed, that under the "public duty doctrine" the officer owed no duty of care to Ms. Bailey upon which liability for negligence could be imposed. We have described the public duty doctrine as "provid[ing] generally that for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a duty to all is a duty to no one)." *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4th 86 (1983) (citing 18 E. McQuillin,

*Municipal Corporations* § 53.04b, at 127 (3d ed. 1977). Absent a showing of a duty running to the injured plaintiff from agents of the municipality, no liability may be imposed for a municipality's failure to provide protection or services to a particular individual. *See, e.g., Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 285, 669 P.2d 451, 39 A.L.R.4th 671 (1983); *J & B Dev. Co. v. King Cy., supra* at 304–05.

Under basic tort principles, an action for negligence does not lie unless the defendant owes a duty of care to the plaintiff. *Chambers–Castanes v. King Cy., supra* at 284. The concept of duty turns on foreseeability and pertinent policy considerations. *See Chambers–Castanes v. King Cy., supra* at 292 (Utter, J., concurring in result). By requiring that a duty toward the particular plaintiff be established, these basic tort principles serve the same end as the public duty doctrine. *See* Note, *Municipal Liability,* 19 Gonz. L. Rev. 727, 735 (1983–1984). After reviewing our "public duty" case law, one commentator has observed that in each case we have applied these basic tort principles—duty, foreseeability, and pertinent public policy—to find an exception to the public duty doctrine. Note, *supra* at 734.

We have almost universally found it unnecessary to invoke the public duty doctrine to bar a plaintiff's lawsuit. *See, e.g., Chambers–Castanes v. King Cy., supra; J & B Dev. Co. v. King Cy., supra; Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978); *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975); *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975); *see also* Note, *supra.* The only identified instance where a plaintiff's claim was barred came in *Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979). There, we rejected a cause of action against the State based upon a failure to enforce securities regulations. However, our decision turned on the existence of a specific statutory disclaimer of any duty as to security documents that may be untrue or misleading. *Baerlein,* at 233; *see Chambers–Castanes,* at 292 (Utter, J., concurring in result); *Rogers v. Toppenish,* 23 Wn. App. 554, 561, 596 P.2d 1096, *review*

*denied,* 92 Wn.2d 1030 (1979). In our most recent decision, we acknowledged the public duty doctrine, but used general tort principles to dismiss the case. *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985).

The standard rationales offered to support continued reference to the public duty doctrine are the risk of excessive governmental liability and the need to prevent interference with governmental process. *J & B Dev. Co.,* at 304. The doctrine is also viewed as a mechanism for focusing attention on whether the governmental agency owed a duty to the particular plaintiff, rather than the public as a whole. *J & B Dev. Co.,* at 304–05. On the other hand, continued reiteration of the doctrine has been attacked as perpetuating sovereign immunity in the guise of the public duty doctrine. *Chambers–Castanes v. King Cy., supra* at 291 (Utter, J., concurring). One commentator persuasively argues that in abrogating sovereign immunity for tortious conduct, the Legislature rejected the same standard rationales now put forth to support the public duty doctrine. Note, *supra* at 730 nn.14, 15. In effect, the public duty doctrine places in this court's hands the task of determining as a matter of "public policy" when a duty of care exists on the part of public employees. This raises the difficult question as to whether affording special protection to agents of the government violates the Legislature's directive, which requires governmental bodies to be liable in tort "to the same extent as if they were a private person or corporation." RCW 4.96.010. *See also* RCW 4.92.090. In addition, injured plaintiffs suffer harshly under the doctrine, a result that may have played a role in the various exceptions this court has carved out of the "no duty" rule. *See, e.g., Chambers–Castanes v. King Cy., supra; J & B Dev. Co. v. King Cy., supra.*

Close inspection of the doctrine and its myriad exceptions may well reveal that the exceptions have virtually consumed the rule. Nevertheless, the facts alleged in this case do not require us to reweigh the pros and cons of the public duty doctrine. Under the facts alleged in the plead-

ing, the public duty doctrine does not bar Ms. Bailey's action against Forks.

■■ Thus far, we have identified four situations in which a governmental agency acquires a special duty of care owed to a particular plaintiff or a limited class of potential plaintiffs, rather than the general duty of care owed to the public at large. These exceptions include: (1) when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons (legislative intent), *Halvorson v. Dahl, supra* at 676–77; (2) where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect (failure to enforce), *Campbell v. Bellevue, supra* at 12–13; *Mason v. Bitton, supra* at 326–27; (3) when governmental agents fail to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff (rescue doctrine), *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 299, 545 P.2d 13 (1975); *see also Chambers–Castanes v. King Cy., supra* at 285 n.3; or (4) where a relationship exists between the governmental agent and any reasonably foreseeable plaintiff, setting the injured plaintiff off from the general public and the plaintiff relies on explicit assurances given by the agent or assurances inherent in a duty vested in a governmental entity (special relationship), *Chambers–Castanes v. King Cy., supra* at 286; *J & B Dev. Co. v. King Cy., supra.*

In addition to these exceptions, we have not applied the public duty doctrine where the State engages in a proprietary function such as providing medical or psychiatric care. *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983) (the State can be held liable for negligent decision by physician to release a mentally disturbed patient from Western State Hospital). As the New York Court of Appeals has observed, in the proprietary context the state is held to the same duty of care as private individuals or institutions engaging in the same activity. *See, e.g., Schrempf v. State,*

66 N.Y.2d 289, 295, 487 N.E.2d 883, 886 (1985).

Facts alleged by Ms. Bailey satisfy all three requirements of the failure to enforce exception. First, the Forks police officer was a governmental agent with a duty to enforce statutory requirements. State statutes prohibit and establish criminal sanctions for driving or being in physical control of a motor vehicle while under the influence of alcohol. RCW 46.61.515. Moreover, under RCW 70.96A.120(2),[1] a police officer has a statutory duty to take into custody a publicly incapacitated individual. Second, Ms. Bailey alleged that the police officer took no corrective action and possessed actual knowledge of statutory violations. According to Ms. Bailey, the officer allowed Medley to take the wheel of the pickup truck and drive away even though Medley's intoxicated state was apparent to the officer.

Finally Ms. Bailey, riding as a passenger on a motorcycle, came within the class RCW 70.96A.120(2) and RCW 46.61-.515 were intended to protect. This court and the Legislature have recognized the important public policy interests inherent in the effective removal of drunken drivers from the roads and the concomitant problem of deciding who should bear the costs for injuries and deaths caused to innocent motorists. *See, e.g., Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 718 P.2d 789 (1986); *Dickinson v. Edwards,* 105 Wn.2d 457, 716 P.2d 814 (1986); *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985); Laws of 1986, ch. 87, 153; Laws of 1985, ch. 101, 302, 352, 407.

Undoubtedly the Legislature enacted RCW 46.61.515 in its entirety, and RCW 70.96A.120(2) in part, to protect the users of public highways from accidents caused by intoxicated drivers. When Ms. Bailey sustained her injuries she was undoubtedly a member of the class to be protected. When a governmental agent knows of the violation, a duty

---

[1]"[A] person who appears to be incapacitated by alcohol and who is in a public place or who has threatened, attempted, or inflicted physical harm on another, shall be taken into protective custody by the police or the emergency service patrol . . ." RCW 70.96A.120(2).

of care runs to all persons within the protected class, not merely those who have had direct contact with the governmental entity. For example, in *Campbell v. Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975), a city electrical inspector knew of the extreme danger created by a nonconforming underwater lighting system, which later electrocuted the plaintiff's wife. Even though the plaintiff had personally complained of the dangerous condition, we held that a duty of due care existed with reference to "those persons or class of persons residing within the ambit of the danger involved". *Campbell*, at 13. Like an electrical inspector who leaves a live electric wire unattended, a police officer who allows an obviously drunk driver to continue on his or her way sets loose an "inherently dangerous instrumentality". *See Campbell*, at 12.[2] When statutes intend to insure the safety of the public highways, a governmental officer's knowledge of an actual violation creates a duty of care to all persons and property who come within the ambit of the risk created by the officer's negligent conduct. *See Mason v. Bitton*, 85 Wn.2d 321, 325–26, 534 P.2d 1360 (1975).

Application of the failure to enforce exception does not expose Forks to the specter of unlimited liability. Liability will not attach unless the governmental agent failed to take care "'commensurate with the risk involved.'" *Campbell*, at

---

[2]The facts of *Campbell* indicated that a neighbor and possibly the plaintiff himself received assurances from the electrical inspector that the dangerous condition had been cured. *Campbell*, at 4–5. Nevertheless, the assurances played no explicit role in our analysis. We found municipal liability because (1) the inspector knew of the danger; (2) a state statute placed the inspector under a duty to correct the problem; (3) the inspector failed to meet his duty; and (4) the plaintiff was within the class benefited by the creation of the statutory duty. *Campbell*, at 13. We acknowledge that in our later decision in *Baerlein v. State*, 92 Wn.2d 229, 235, 595 P.2d 930 (1979) we assumed incorrectly that the assurances of corrective action created the special duty recognized in *Campbell*. In any event, the *Campbell* exception would not have altered the result in *Baerlein*. The securities regulation statute at issue, RCW 21.20.360, contains a complete express disclaimer of any duty owed to individual investors such as the plaintiff. *See Baerlein*, at 233. Thus, the disclaimer eliminated any possibility that a special duty could attach. *See Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 292, 669 P.2d 451, 39 A.L.R.4th 671 (1983) (Utter, J., concurring in result).

12 (quoting *Runkel v. New York,* 282 A.D. 173, 176, 123 N.Y.S.2d 485 (1953)). Forks has only the limited duty of care to act reasonably within the framework of the laws governing the municipality and the economic resources available to it. In determining whether a municipality's act or failure to act was unreasonable, the trier of fact can take into account the municipality's available resources and its resource allocation policy. Thus, under the instant facts, Forks would be subject to liability only if the police officer's failure to detain Medley was unreasonable under the circumstances. For example, the trier of fact could consider the following circumstances: the impracticability of detaining Medley in light of other considerations at the time of the incident; the financial resources available to the town to detain all drivers thought to be under the influence of alcohol; and the number of police personnel available at the time to respond to other calls for assistance. Furthermore, Forks' liability is also limited by the requirements of foreseeability, *Campbell,* at 12 (quoting *Runkel v. New York, supra* at 176), and proximate cause, *Hartley v. State, supra* at 777.

Although Ms. Bailey must now prove that Forks breached its duty and that the officer's breach proximately caused her injuries, judgment on the pleadings was improper. We reverse.

PEARSON, C.J., GOODLOE, J., and VERHAREN, J. Pro Tem., concur.

DORE, J., concurs in the result.

DURHAM, J. (concurring in the result)—I agree with the majority that the trial court erred in dismissing Bailey's complaint. However, to the extent that the majority opinion questions the viability of the public duty doctrine, I do not concur.

Our task in this case is to determine if Bailey has alleged facts in her pleading that will withstand a CR 12(c) motion. As the majority correctly concludes, the facts alleged by

Bailey come within an exception to the public duty doctrine, and, therefore, Bailey may proceed with her action. Having decided this, we need not consider the viability of the public duty doctrine itself in this case. Hence, the doubts expressed by the majority about the wisdom of the public duty doctrine are mere dicta.

BRACHTENBACH, DOLLIVER, and ANDERSEN, JJ., concur with DURHAM, J.