[No. 29878-7-III.   Division Three.   May 8, 2012.]

DELORES WEAVER, *as Personal Representative, Appellant*, v. SPOKANE COUNTY, *Respondent.*

*Howard M. Goodfriend* (of *Smith Goodfriend PS*) and *Stephen L. Nordstrom* (of *Nordstrom Law Firm PLLC*), for appellant.

*Peter J. Johnson* (of *Johnson Law Group*), for respondent.

¶1 KULIK, J. — About one and one-half hours after a sheriff's deputy told an intoxicated Duane Weaver not to walk in the street, or to at least walk facing traffic, a drunk driver struck Mr. Weaver. He died 17 months later from his injuries. Mr. Weaver's estate (Estate) sued Spokane County (County) for negligence, claiming that the deputy's failure

to take Mr. Weaver into protective custody breached the duty owed to him. The Estate asserts Mr. Weaver was incapacitated or gravely disabled by alcohol. The court granted summary judgment to the County, concluding that the public duty doctrine barred the lawsuit. Under the public duty doctrine, liability is not imposed on the County unless the duty breached was owed to Mr. Weaver as an individual, not merely an obligation owed to the public in general. We agree that the Estate failed to show an individual duty owed to Mr. Weaver and, therefore, affirm summary judgment in favor of the County.

## FACTS

¶2 On February 8, 2008, at approximately midnight, Spokane County Deputy Mark Melville saw Mr. Weaver walking on the snow berm covering the sidewalk along Division Street in Spokane, Washington. Mr. Weaver was having a hard time maintaining his balance on the snow piles and stepped off the snow to walk in the street. Deputy Melville also observed at least two cars change lanes to avoid hitting Mr. Weaver. Deputy Melville could not tell if Mr. Weaver was stumbling because of intoxication or because of the difficulty of walking on a snow berm. Mr. Weaver was wearing dark or mixed-color clothing.

¶3 Deputy Melville stopped Mr. Weaver and looked at Mr. Weaver's identification. Mr. Weaver asked Deputy Melville why he was being mean to him and harassing him. Deputy Melville told Mr. Weaver that he was concerned for Mr. Weaver's safety because he was walking in the lanes of traffic. Mr. Weaver responded that he was having a hard time walking in the snow, pointed to the snow, and asked Deputy Melville what he expected Mr. Weaver to do.

¶4 During the conversation, Deputy Melville noticed that Mr. Weaver was obviously intoxicated. Mr. Weaver's eyes were bloodshot and watery, and Mr. Weaver was weaving slightly from side to side. Deputy Melville did not smell alcohol on Mr. Weaver.

¶5 According to Deputy Melville, Mr. Weaver had no problems communicating. Deputy Melville asked Mr. Weaver where he was headed. Mr. Weaver told him that he was headed home and said home was downtown. Downtown was about five miles away. Deputy Melville told Mr. Weaver that he was heading the wrong way. Mr. Weaver then indicated that he was heading somewhere else and pointed east toward a neighborhood called Wedgewood. When asked a second time where he was headed, Mr. Weaver gave Deputy Melville the same information. Mr. Weaver was not confused about where he wanted to go.

¶6 Deputy Melville then advised Mr. Weaver to stay off Division Street because it was too busy. Mr. Weaver said okay. Deputy Melville also told Mr. Weaver that if he had to walk on the roadway, he should walk facing traffic. Deputy Melville saw Mr. Weaver leave the roadway. Mr. Weaver started walking through a parking lot and continued eastbound behind a building. Mr. Weaver headed toward Wedgewood. He did not appear to be stumbling as he walked away. The contact between Deputy Melville and Mr. Weaver lasted less than five minutes. Deputy Melville did not give Mr. Weaver a breathalyzer test or a sobriety test because Mr. Weaver had not violated any laws that would require tests.

¶7 Deputy Melville chose not to follow Mr. Weaver after he left the roadway and disappeared behind a building because "[Mr. Weaver] appeared in possession of his faculties, other than being, in my opinion, under the influence of alcohol. He said he was going down that way. He told me he would stay off the street, I let him walk away." Clerk's Papers at 63. Deputy Melville stated that he was concerned for Mr. Weaver's safety because he was walking in the roadway, not because he was intoxicated.

¶8 About one and one-half hours after Deputy Melville spoke with Mr. Weaver, a drunk driver struck Mr. Weaver on Division Street about 100 yards from where Deputy Melville first encountered Mr. Weaver. Immediately before the

impact, a witness saw Mr. Weaver walking southbound in the northbound curb lane of Division Street. The drunk driver hit Mr. Weaver as Mr. Weaver began walking westbound across Division Street, directly in front of the oncoming vehicle. Based on the testimony, Mr. Weaver was walking facing traffic prior to being struck.

¶9 Seventeen months after the accident, Mr. Weaver died of his injuries. The Estate filed a complaint against the County for damages resulting from Mr. Weaver's medical and funeral expenses. The Estate contended that Deputy Melville, as an agent of the County, acted negligently by not protecting Mr. Weaver despite having actual knowledge that Mr. Weaver was incapacitated or gravely disabled and in danger of serious physical harm.

¶10 The County and the Estate both moved for summary judgment. The court granted the County's motion and dismissed the complaint based on the public duty doctrine. The court held that none of the four exceptions to the public duty doctrine applied. Specifically, the trial court reviewed the statutory scheme of RCW 70.96A.120 and found that the failure to enforce and legislative intent exceptions did not apply because Mr. Weaver was not incapacitated or gravely disabled by alcohol as a matter of law.

¶11 The Estate appeals. It contends that all four exceptions to the public duty doctrine apply.

## ANALYSIS

¶12 An appellate court reviews an order of summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is of such a nature that it affects the outcome of the litigation." *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). Factual issues may be decided as a matter of law

when reasonable minds could reach but one conclusion or when the factual dispute is so remote it is not material. *Ruffer v. St. Frances Cabrini Hosp. of Seattle*, 56 Wn. App. 625, 628, 784 P.2d 1288 (1990) (quoting *Trane Co. v. Brown-Johnston, Inc.*, 48 Wn. App. 511, 513, 739 P.2d 737 (1987)).

¶13 The reviewing court considers the facts and inferences from the facts in the light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). The facts set forth must be specific and detailed. *Sanders v. Woods*, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

¶14 A defendant moving for summary judgment may meet the initial burden by pointing out the absence of evidence to support the nonmoving party's case. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the moving defendant meets the initial showing, then the burden of proof shifts to the plaintiff. *Id.* at 225 (quoting *Celotex*, 477 U.S. at 322). The nonmoving plaintiff may not rely on mere speculation or unsupported assertions, facts not contained in the record, or inadmissible hearsay. *Higgins v. Stafford*, 123 Wn.2d 160, 169, 866 P.2d 31 (1994) (quoting *Peterick v. State*, 22 Wn. App. 163, 181, 589 P.2d 250 (1977), *overruled on other grounds by Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 709 P.2d 793 (1985)).

¶15 If, at this point, the plaintiff " 'fails to make a showing sufficient to establish the existence of an element essential to [his or her] case, and on which [he or she] will bear the burden of proof at trial', then the trial court should grant the motion." *Young*, 112 Wn.2d at 225 (quoting *Celotex*, 477 U.S. at 322).

¶16 "As a result of the enactment in 1967 of RCW 4.96.010, which did away with Washington's shield of absolute sovereign immunity, local governments such as a county may be liable for damages arising out of their

tortious conduct or the tortious conduct of its employees." *Cummins v. Lewis County*, 156 Wn.2d 844, 853, 133 P.3d 458 (2006). The public duty doctrine provides a framework to determine when a governmental entity owes a duty to a plaintiff alleging negligence. *Id.*

¶17 Under the public duty doctrine, " 'no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one).' " *Taggart v. State*, 118 Wn.2d 195, 217, 822 P.2d 243 (1992) (internal quotation marks omitted) (quoting *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988)).

██ ¶18 There are four exceptions to the public duty doctrine. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). "The question whether an exception to the public duty doctrine applies is thus another way of asking whether the [governmental agency] had a duty to the plaintiff." *Taggart*, 118 Wn.2d at 218. These exceptions include the (1) failure to enforce, (2) legislative intent, (3) special relationship, and (4) rescue doctrine. *Bailey*, 108 Wn.2d at 268. "If one of these exceptions applies, the government will be held as a matter of law to owe a duty to the individual plaintiff or to a limited class of plaintiffs." *Cummins*, 156 Wn.2d at 853.

¶19 The Estate contends that an individual duty can be established through each of the exceptions to the public duty doctrine.

██ ¶20 1. *Failure To Enforce Exception.* Failure to enforce applies "where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intends to protect." *Bailey*, 108 Wn.2d at 268. "The statute must create a mandatory duty to take specific action to correct a violation." *Smith v. City of Kelso*,

112 Wn. App. 277, 282, 48 P.3d 372 (2002). The failure to enforce exception is to be construed narrowly. *Id.*

¶21 The Estate contends that RCW 70.96A.120(2) created a mandatory duty for Spokane County to take into protective custody those persons who are incapacitated or gravely disabled by alcohol and in public. The Estate argues that because Mr. Weaver fit into this class, Spokane County had a duty to take him into protective custody.

¶22 The legislature enacted chapter 70.96A RCW as a comprehensive statute to provide a continuum of treatment for alcoholism and chemical dependency. RCW 70.96A.010, .011. RCW 70.96A.120(2) provides, in applicable part, that a person who appears to be incapacitated or gravely disabled by alcohol or other drugs and who is in a public place or who has threatened, attempted, or inflicted physical harm on himself, herself, or another shall be taken into protective custody by a peace officer and as soon as practicable, but in no event beyond eight hours, brought to an approved treatment program.

¶23 RCW 70.96A.020 provides definitions applicable to RCW 70.96A.120(2):

> (12) "Gravely disabled by alcohol or other psychoactive chemicals" or "gravely disabled" means that a person, as a result of the use of alcohol or other psychoactive chemicals: (a) Is in serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by a repeated and escalating loss of cognition or volitional control over his or her actions and is not receiving care as essential for his or her health or safety.
>
> . . . .
>
> (14) "Incapacitated by alcohol or other psychoactive chemicals" means that a person, as a result of the use of alcohol or other psychoactive chemicals, is gravely disabled or presents a likelihood of serious harm to himself or herself, to any other person, or to property.
>
> . . . .

(18) "Likelihood of serious harm" means:

(a) A substantial risk that (i) Physical harm will be inflicted by an individual upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on one's self; (ii) physical harm will be inflicted by an individual upon another, as evidenced by behavior that has caused the harm or that places another person or persons in reasonable fear of sustaining the harm; or (iii) physical harm will be inflicted by an individual upon the property of others, as evidenced by the behavior that has caused substantial loss or damage to the property of others.

¶24 The minimum threshold for alcohol commitment requires more than just a danger. *In re Treatment of Mays*, 116 Wn. App. 864, 872, 68 P.3d 1114 (2003) (referencing RCW 70.96A.140(1), which uses the same statutory definitions of "incapacitated" and "gravely disabled" by alcohol as RCW 70.96A.120(2)). Under the "gravely disabled" standard, the potential for harm must be " 'great enough to justify such a massive curtailment of liberty.' " *In re Det. of LaBelle*, 107 Wn.2d 196, 204, 728 P.2d 138 (1986) (internal quotation marks omitted) (quoting *In re Harris*, 98 Wn.2d 276, 283, 654 P.2d 109 (1982)). Statutes that involve a significant deprivation of liberty must be strictly construed. *LaBelle*, 107 Wn.2d at 205.

¶25 The Estate relies heavily on *Bailey* to establish that a threshold duty exists under RCW 70.96A.120. *Bailey*, 108 Wn.2d 262. We find *Bailey* factually distinguishable. The officers in *Bailey* had actual knowledge of a statutory violation prior to their obligation to enforce RCW 70.96A-.120. *See Alexander v. County of Walla Walla*, 84 Wn. App. 687, 693-94, 929 P.2d 1182 (1997).

¶26 Here, based on the undisputed facts, Deputy Melville had no knowledge of a statutory violation under RCW 70.96A.120(2). While RCW 70.96A.120(2) would have required Deputy Melville to take Mr. Weaver into protective custody if Mr. Weaver was incapacitated or gravely disabled by alcohol, the undisputed facts and all reasonable infer-

ences therefrom do not indicate that Mr. Weaver appeared in such a state. Deputy Melville testified that Mr. Weaver acted as if he was in possession of his faculties and did not appear to be confused. Mr. Weaver did not have difficulty communicating, and he appeared to know where he wanted to go.

¶27 Mr. Weaver was not gravely disabled as a matter of law because the facts do not show that he was in danger of physical harm resulting from a failure to provide for his health and safety. Deputy Melville told Mr. Weaver that he was concerned for his safety because he was walking on Division Street. When Deputy Melville instructed Mr. Weaver to stay off Division Street, Mr. Weaver agreed to do so. Mr. Weaver showed that he understood Deputy Melville and took steps to provide for his safety by leaving Division Street and walking toward the Wedgewood location. He also evidenced his understanding and provided for his safety when he followed Deputy Melville's instructions and walked facing traffic when he returned to Division Street.

¶28 The facts do not show a likelihood that serious harm would come to Mr. Weaver. Deputy Melville said he was not concerned about Mr. Weaver walking down Wedgewood in his condition. Mr. Weaver voluntarily left Division Street, thereby eliminating any likelihood of substantial risk. Additionally, there was no evidence that Mr. Weaver would return to Division Street and be hit by a drunk driver or suffer any other type of harm.

¶29 Admittedly, Deputy Melville did say that Mr. Weaver was intoxicated and showed signs of intoxication, such as slurred speech, bloodshot and watery eyes, and weaving slightly from side to side during their conversation. Deputy Melville also reported that Mr. Weaver initially said that he was headed home, which was five miles away, and then changed his story. These facts do not support the conclusion that Mr. Weaver was gravely disabled or that he could not provide for his own health and safety.

¶30 Significantly, mere intoxication does not bring Mr. Weaver into the class of individuals protected by RCW 70-.96A.120(2). RCW 70.96A.120(2) expressly addresses particular individuals who are incapacitated or gravely disabled by alcohol and other drugs and who are in a public place. The statute does not apply to all persons who are simply intoxicated. RCW 70.96A.120(2) involves a significant deprivation of liberty because it allows an officer to take a person into protective custody against the person's will. Therefore, RCW 70.96A.120(2) must be strictly construed. It should not be loosely read to include all persons who exhibit signs of intoxication.

¶31 As an alternative, the Estate contends that the determination of whether Mr. Weaver was incapacitated or gravely disabled by alcohol is an issue of fact that should be presented to the jury. But "[w]hether a defendant owes a duty to the complaining party is a question of law." *Hostetler v. Ward*, 41 Wn. App. 343, 349, 704 P.2d 1193 (1985).

¶32 Because Mr. Weaver does not fit the definition of "incapacitated or gravely disabled by alcohol," Deputy Melville did not have knowledge of a statutory violation and did not have a duty to act under RCW 70.96A.120(2). The failure to enforce exception does not apply.

¶33 2. *Legislative Intent Exception.* The legislative intent exception applies when the terms of a regulatory statute demonstrate a clear legislative intent to identify and protect a particular class of persons. *Johnson v. State*, 164 Wn. App. 740, 748, 265 P.3d 199 (2011) (quoting *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988)), *review denied*, 173 Wn.2d 1027, 273 P.3d 982 (2012). "The requirement is not that the class be small or narrow, but that it be 'particular and circumscribed.'" *Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 79, 930 P.2d 958 (1997) (quoting *Donaldson v. City of Seattle*, 65 Wn. App. 661, 667, 831 P.2d 1098 (1992)). The standard for a statute to identify "a particular and circumscribed class of persons" for the legislative intent exception is more strin-

gent than that required for the failure to enforce exception. *Waite v. Whatcom County*, 54 Wn. App. 682, 688, 775 P.2d 967 (1989).

¶34 In *Moore v. Wayman*, the State Building Code Act, chapter 19.27 RCW, did not reflect a clear intent to protect occupants when the statute stated that " '[t]he purpose of this chapter is to promote the health, safety and welfare of the occupants or users of buildings and structures and the general public by the provision of building codes throughout the state.' " *Moore v. Wayman*, 85 Wn. App. 710, 725, 934 P.2d 707 (1997) (alteration in original) (quoting RCW 19.27-.020). The court determined that the primary intent of the state building code was to provide building codes throughout the state and, if the legislature wanted to impose liability upon counties, it would have plainly spoken. *Id.* at 725-26.

¶35 The Estate contends that the legislature in RCW 70.96A.120(2) expressed a clear intent to protect those who are incapacitated or gravely disabled by alcohol and who are in a public place.

¶36 In stating the purpose of chapter 70.96A RCW, the legislature stated that "the use of alcohol and other drugs has become a serious threat to the health of the citizens of the state of Washington. . . . Therefore, a comprehensive statute to deal with alcoholism and other drug addiction is necessary." RCW 70.96A.011. The policy established by chapter 70.96A RCW is that alcoholics and intoxicated persons should not be subjected to criminal prosecution because of their consumption of alcohol but, instead, be provided continuum treatment within the funds available. RCW 70.96A.010.

¶37 In considering the plain language of chapter 70.96A RCW, the chapter does not reference a clear legislative intent to protect a particular group of persons. Instead, the statute's purpose is to protect the health of all of the citizens of the state of Washington. As in *Moore*, while chapter 70.96A RCW and RCW 70.96A.120(2) mention a

particular group, alcoholics, this language is not enough to consider this group a particular and circumscribed class of persons. The legislature clearly intended to protect and provide services for the citizens of Washington as a general class of persons. The legislative intent exception does not apply to Mr. Weaver.

¶38  3. *Special Relationship Exception.* The special relationship exception applies when " '(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give[ ] rise to justifiable reliance on the part of the plaintiff.' " *Cummins*, 156 Wn.2d at 854 (internal quotation marks omitted) (quoting *Beal v. City of Seattle*, 134 Wn.2d 769, 785, 954 P.2d 237 (1998)). The plaintiff must specifically seek an express assurance, and the government agent must unequivocally give that assurance. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 789, 30 P.3d 1261 (2001). "Neither implied nor inherent assurances are sufficient." *Alexander*, 84 Wn. App. at 695.

¶39  In *Alexander*, the court determined that the special relationship exception did not apply when police officers told Ms. Alexander that she was able to drive even though she admitted to the officers that she had been drinking. *Id.* at 690-91. The court concluded that the officers did not offer Ms. Alexander an express assurance that she was fine to drive. *Id.* at 695. Additionally, any reliance on the officer's assurances was not justified because Ms. Alexander knew she had too much to drink and should not be driving. *Id.* at 695-96.

¶40  Here, there is no evidence to show that Mr. Weaver specifically sought an express assurance from Deputy Melville that walking facing traffic would protect him from harm. The testimony of Deputy Melville shows that he stopped Mr. Weaver and warned him to stay off Division Street. The instruction to walk facing traffic was

not an assurance of safety but, at most, a recitation of traffic laws as a way to lessen the potential for harm.

¶41 Nor does the evidence support a conclusion that Mr. Weaver was justified in relying on the supposed promise by Deputy Melville. Deputy Melville's warning that Division Street was too busy should have alerted Mr. Weaver not to reenter the street. In fact, Mr. Weaver's decision to leave Division Street infers that he understood the hazards of walking on that roadway. As in *Alexander*, any reliance on Deputy Melville's suggestion to walk facing traffic would not be justified because Mr. Weaver was aware of the potential harm. The special relationship exception does not apply.

¶42 4. *Rescue Doctrine Exception.* The rescue doctrine exception creates a duty when a governmental agent undertakes a duty to aid or warn a person in danger, the government agent fails to exercise reasonable care, and the person to whom the aid is rendered relies on the offer to render aid. *Johnson*, 164 Wn. App. at 750 (quoting *Chambers-Castanes v. King County*, 100 Wn.2d 275, 285 n.3, 669 P.2d 451 (1983)). "Integral to this exception is that the rescuer, including a state agent, *gratuitously* assumes the duty to warn the endangered parties of the danger and breaches this duty by failing to warn them." *Babcock v. Mason County Fire Dist. No. 6*, 101 Wn. App. 677, 685, 5 P.3d 750 (2000), *aff'd*, 144 Wn.2d 774.

¶43 The record does not support the conclusion that Deputy Melville gratuitously undertook a duty to aid or warn Mr. Weaver. Deputy Melville's advice to walk facing traffic was not a gratuitous promise of safety but a recitation of the law. Deputy Melville warned Mr. Weaver to stay off Division Street because it was too busy. Deputy Melville did not fail to exercise reasonable care. The rescue doctrine exception does not apply.

¶44 *Conclusion.* As a matter of law, Spokane County did not owe an individual duty to Mr. Weaver. The trial court did not err in granting summary judgment to Spokane County.

¶45 The Estate asks this court to abandon the public duty doctrine as a method of analyzing governmental liability. We decline. As recently held in *Johnson*, "Until such time as our Supreme Court overrules itself, we are bound by its holding that the public duty doctrine applies in the State of Washington." *Johnson*, 164 Wn. App. at 754.

¶46 We affirm summary judgment in favor of Spokane County.

SWEENEY and BROWN, JJ., concur.

Review denied at 175 Wn.2d 1011 (2012).