IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL KERNS, as the Personal Representative of the ESTATE OF CHRISTOPHER KERNS, | ) ) ) ) | No. 79649-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Appellant/Cross-Respondent, | ) ) | |
| v. | ) ) | |
| WASHINGTON STATE PATROL and STATE OF WASHINGTON, | ) ) ) | |
| Respondents/Cross-Appellants. | ) ) | |
| | ) | FILED: May 13, 2019 |

ANDRUS, J. — The Estate of Christopher Kerns (the Estate) contends Washington State Patrol (WSP) should be held liable for failing to arrest Joseph Schaffer and allowing him to drive while impaired by drugs. Because the Estate has no evidence that WSP Trooper Darrel Nash knew Schaffer was driving under the influence, the Estate's claims are barred by the public duty doctrine. We affirm the dismissal of this lawsuit.

## FACTS

On April 17, 2014, at 5:47 p.m., Trooper Nash responded to a vehicle accident on Interstate 5 (I-5) near Joint Base Lewis-McChord (JBLM). Diane Garvey called the police after Joseph Schaffer rear-ended her vehicle. By the time Trooper Nash arrived, Garvey and Schaffer had pulled off the freeway and were

parked outside the main gate of JBLM. Trooper Nash talked to both drivers, and after Schaffer admitted he failed to stop and "tapped" Garvey's vehicle's rear bumper, Trooper Nash cited him for following too closely and released both drivers. Trooper Nash saw no evidence Schaffer was impaired by drugs or alcohol. Shaffer did not have slurred speech, watery eyes, speech abnormalities, or difficulty walking. Garvey testified that while she thought Schaffer acted oddly, he "did not seem drunk," and was not slurring or stumbling around.

At approximately 7:00 p.m. that evening, Schaffer ran a red light in Puyallup and struck pedestrian Christopher Kerns, who died at the scene. A WSP toxicology test showed Schaffer had very high levels of oxycodone, diazepam (Valium), and nordiazepam, as well as therapeutic levels of clonazepam (Clonopin), and alprazolam (Xanax), in his blood approximately three hours after the accident. According to the Estate's toxicology expert, Dr. Janci C. Lindsay, Ph.D., the levels of opiate narcotics in his system were "toxic and lethal."

Schaffer typically took both oxycodone and OxyContin three or four times a day to deal with back pain and was prescribed clonazepam for anxiety, which he took daily. On the day of the accident, Schaffer drove to Seattle to see a doctor. He claimed he did not take his normal dosage of medications before he left home because he knew he would be driving. He was, however, carrying some pills in a vial in case his car broke down or he got stuck in Seattle, and needed his medications. He testified that in the immediate aftermath of the accident, he was afraid to get caught with narcotics out of the prescribed bottles, so he ingested the contents of the vial, which contained two oxycodone pills, two clonazepam pills,

and perhaps a Xanax or an Ativan. Schaffer denied taking any drugs before hitting Kerns, with the possible exception of taking a morning dose of oxycodone.

The credibility of Schaffer's testimony that he took no medications until *after* killing Kerns is suspect. An eyewitness to the fatal accident, Mike Parks, saw Schaffer strike Kerns, and then accelerate as he swerved and crashed into cars parked at the Korum Ford dealership. Parks saw Schaffer crawl out of his car within minutes of the crash, stumbling and struggling to walk. When Parks spoke with Schaffer, he was unable to speak without slurring. Parks followed Schaffer into a bathroom of the dealership where Parks had to help Schaffer call his wife because Schaffer could not operate his phone or recall his wife's number. Parks was under the impression Schaffer was impaired by medications. Schaffer testified that when police arrived, he "was higher than a kite." He admitted telling police officers immediately after the accident that he had taken OxyContin at some point that day. Schaffer subsequently pleaded guilty to vehicular homicide and was sentenced to 60 months in prison.[1]

The Estate filed suit against WSP, claiming Trooper Nash was negligent in failing to recognize that Schaffer was under the influence of drugs and breached a duty he owed to Kerns to enforce traffic laws, investigate vehicular accidents, and restrain individuals driving under the influence of drugs.

---

[1] Under RCW 46.61.520, a driver is guilty of vehicular homicide if the driver causes the death of another while operating a motor vehicle (a) while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or (b) in a reckless manner; or (c) with disregard for the safety of others. Because none of the criminal pleadings are in the record, we do not know the basis for the conviction. We assume that, given the level of drugs found in his blood, Schaffer pleaded guilty based on the act of causing Kerns' death while driving under the influence of drugs.

WSP moved for summary judgment, arguing the public duty doctrine barred the Estate's negligence claims. WSP relied on the testimony of Trooper Nash and Garvey that they saw no signs that Schaffer was impaired and on Schaffer's testimony that he was not impaired when he spoke to Trooper Nash outside of JBLM.

The Estate presented evidence primarily through its toxicology expert, Dr. Lindsay, who testified that the high level of drugs and their metabolites in Schaffer's blood were inconsistent with Schaffer having ingested pills after the 7:00 p.m. accident and were more consistent with Schaffer having taken a double dose of the medications on the morning of the accidents before Schaffer left for Seattle. She also testified it was probable that Schaffer ingested more OxyContin or oxycodone and alprazolam sometime after his doctor's appointment in Seattle and before striking Kerns. In her opinion, the toxic level of opiates and benzodiazepines in Schaffer's blood would have caused severe psychomotor impairment, manifested as delayed perception and reaction time, slowed and sluggish responses, incoordination, respiratory depression, and loss of consciousness. Based on this evidence, the Estate argued it would have been obvious to Trooper Nash that Schaffer was intoxicated and Nash should have arrested him for violating RCW 46.61.502.[2] It contends that had such an arrest occurred, Schaffer would have been unable to continue driving in an impaired state and would not have killed Kerns.

---

[2] RCW 46.61.502(1) makes it a crime to drive while under the influence of intoxicating liquor or any drug. The crime is a gross misdemeanor unless the driver has a certain number or type of prior DUI convictions, in which case the offense becomes a class B felony. RCW 46.61.502(6).

The trial court granted WSP's motion for summary judgment, and the Estate appeals.

## ANALYSIS

In any negligence action, the plaintiff must establish that the defendant owed a duty of care and breached that duty. Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co., 115 Wn.2d 506, 528, 799 P.2d 250 (1990). Determining an existence of a duty is a question of law. Id. The public duty doctrine precludes liability for a public official's negligent conduct if the duty was owed to the general public. Id. at 529.

There are recognized exceptions to the public duty doctrine. Bailey v. Town of Forks, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). At issue here is the "failure to enforce" exception. Under this exception, a duty owed to the general public becomes a duty owed to a plaintiff when (1) government agents who are responsible for enforcing statutory requirements actually know of a statutory violation, (2) the government agents have a statutory duty to take corrective action but fail to do so, and (3) the plaintiff is within the class the statute is intended to protect. Id. The plaintiff has the burden to establish each element of the failure to enforce exception, and the court must construe the exception narrowly. Atherton, 115 Wn.2d at 531.

The Estate asserts the trial court erred in concluding on summary judgment that the public duty doctrine bars its claims. This court reviews an order of summary judgment de novo. Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). Summary judgment is appropriate if evidence shows there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

The Estate argues it presented sufficient evidence to demonstrate that Trooper Nash actually knew Schaffer was driving under the influence of drugs. Whether a public official had actual knowledge of a statutory violation is a question of fact. Weaver v. Spokane County, 168 Wn. App. 127, 133-34, 275 P.3d 1184 (2012). But this court may resolve issues of fact on summary judgment if reasonable minds could reach only one conclusion from the evidence presented. Id.

There is no direct evidence Trooper Nash actually knew Schaffer was driving under the influence. Trooper Nash testified Schaffer did not "display any signs of impairment." Shaffer's speech was not slurred, his eyes were not red or watery, he walked normally, and he responded appropriately to all of Trooper Nash's questions. Trooper Nash observed no prescription bottles in Schaffer's vehicle and did not smell alcohol on Schaffer's person or in his vehicle. Garvey's testimony largely corroborated that of Trooper Nash. Garvey testified Schaffer "did not seem drunk to me. He wasn't, like, slurring his words and stumbling around or anything."

Direct evidence of actual knowledge of a statutory violation is sometimes difficult to obtain and, as a result, circumstantial evidence can support a finding of actual knowledge. Waite v. Whatcom County, 54 Wn. App. 682, 686-87, 775 P.2d 967 (1989). The Estate points to three facts to argue a reasonable jury could reject Trooper Nash's testimony as not credible. First, the level of drugs and metabolites

in Schaffer's blood was so high that, according to Dr. Lindsay, Schaffer had to have been seriously impaired when Trooper Nash saw him. Second, Garvey testified she thought Schaffer was acting oddly by smiling inappropriately and standing too close to her when they spoke. Third, Schaffer exhibited a lack of control over his car by following Garvey too closely on I-5 and then demonstrated confusion when he got into Trooper Nash's patrol car when instructed to return to his own vehicle.

We conclude these facts do not create a genuine issue of material fact of actual knowledge. First, Dr. Lindsay's opinions as to Schaffer's level of intoxication were based on toxicology results not known to Trooper Nash.[3] Regardless of the amount of drugs Schaffer actually ingested before his accident with Garvey, no one saw him exhibiting the kind of symptoms Dr. Lindsay suggests he should have displayed. No reasonable juror could conclude Trooper Nash actually knew Schaffer had toxic levels of opiates in his bloodstream.

While Garvey thought Schaffer was acting odd, she never shared her impressions of Schaffer with Trooper Nash. Again, even if she thought Schaffer was behaving strangely, that was not information Trooper Nash knew.

Finally, neither the fact that Schaffer committed a traffic infraction nor the fact that he misunderstood Trooper Nash's instructions to return to his car makes it more probable than not that Trooper Nash actually knew Schaffer was impaired

---

[3] Under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution, a warrantless arrest must be based on probable cause. State v. Bonds, 98 Wn.2d 1, 8–9, 12, 653 P.2d 1024 (1982); State v. Gillenwater, 96 Wn. App. 667, 670, 980 P.2d 318 (1999). Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been committed. State v. Terrovona, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). Probable cause to arrest must be judged on the facts known to the arresting officer before or at the time of arrest. Gillenwater, 96 Wn. App. at 670.

by drugs. The evidence might support a contention that Trooper Nash should have known that something was amiss. But the "should have known" standard has been explicitly rejected by our Supreme Court in the context of the failure to enforce exception. See Atherton, 115 Wn.2d at 532-33 (constructive knowledge of violation is insufficient; requirement of actual knowledge does not encompass facts which governmental agent should have known).

Our Supreme Court's holding in Bailey v. Town of Forks does not require a different result. In that case, the Court held that if a police officer has actual knowledge that a person is intoxicated, that officer has a duty to prevent the person from driving an automobile. 108 Wn.2d at 269. The Bailey court reinstated an injured motorist's claim against the town of Forks because the town police officer allegedly permitted a drunk bar patron to drive his truck home. Id. at 264. But that case was decided on the pleadings, not on summary judgment. Id. And the Supreme Court assumed "the truth of every fact well pleaded by Ms. Bailey." Id. Bailey specifically alleged that the police officer knew the bar patron was "intoxicated to such an extent as to be physically and legally unfit to drive his pickup truck and therefore, a hazard to other users of the highways," and nevertheless ordered him to leave the area and personally observed him get behind the wheel and drive away. Id. at 264-65. These factual allegations sufficed to survive the town's motion to dismiss on the pleadings.

On summary judgment, however, "the adverse party may not rest on mere allegations in the pleadings but must set forth specific facts showing that there is a genuine issue for trial." LaPlante v. State, 85 Wn.2d 154, 158, 531 P.2d 299

(1975). The procedural posture of this case makes it distinguishable from Bailey. Based on this record, there is insufficient evidence from which a jury could conclude that Trooper Nash actually knew Schaffer was impaired by drugs in the immediate aftermath of the fender bender with Garvey. Thus, the public duty doctrine bars the Estate's claims.[4] Because we affirm the court's dismissal of the Estate's claim, we will not address WSP's conditional cross-appeal.

Affirmed.

WE CONCUR:

_Andrus, J._

_Smith, J._

_Mann, A.C.J._

---

[4] The Estate also asks this court to abrogate or limit the public duty doctrine, asserting it is against public policy. But this argument has been explicitly rejected by our courts. See Johnson v. State, 164 Wn. App. 740, 754, 265 P.3d 199 (2011) ("Until such time as our Supreme Court overrules itself, we are bound by its holding that the public duty doctrine applies in the State of Washington."); Weaver v. Spokane County, 168 Wn. App. 127, 143, 275 P.3d 1184 (2012) (same).