[No. 40637-3-II.   Division Two.   November 8, 2011.]

DEL JOHNSON, *Individually and as Personal Representative, Appellant,* v. THE STATE OF WASHINGTON ET AL., *Respondents.*

*Franklin L. Dennis* (of *Barokas Martin & Tomlinson*) (*James S. Coon, of counsel*), for appellant.

*Robert M. McKenna, Attorney General*, and *Edward S. Winskill, Assistant*, for respondent State of Washington.

*Duncan K. Fobes* and *Rhianna M. Fronapfel* (of *Patterson Buchanan Fobes Leitch & Kalzer PS*), for respondent Grays Harbor County.

*Donald L. Law* (of *Law Lyman Daniel Kamerrer & Bogdanovich PS*), for respondent Grays Harbor Communications Center.

¶1 Hunt, J. — Del Johnson, individually and as personal representative of Beverly Johnson's estate, appeals the trial court's summary judgment dismissal of his lawsuit against the State of Washington, Grays Harbor County, and Grays

Harbor E911 Communications Center (Grays Harbor 911)[1] (collectively Defendants), in which he alleged that they negligently failed to inform a third party that Beverly[2] was a missing and endangered person with a history of seizures. Johnson argues that the public duty doctrine, which normally would preclude this type of lawsuit, does not apply here; we disagree. Holding that Johnson has failed to demonstrate that Defendants owed Beverly a special duty different from Defendants' general public duty, we affirm.

## FACTS

### I. MISSING PERSON

¶2 Del Johnson is an Oregon resident and personal representative of the estate of Beverly Johnson, his late wife. On January 27, 2007, Beverly drove her vehicle away from her local library. Her family reported to the Beaverton, Oregon, Police Department that she was "missing with a history of seizure disorder," which "caused her to be severely disoriented while appearing to function normally," especially at that time, when Beverly's "medications that normally controlled her condition were not functioning because of a flu virus." Clerk's Papers (CP) at 14, 83. At 7:03 PM, the Beaverton Police Department reported Beverly as a "missing person endangered with history of seizures" in the National Crime Information Center (NCIC)[3] and provided her physical description, a description of the clothes she was last seen wearing, and the description and license plate

---

[1] Grays Harbor 911 was "established by inter-local agreement [among] Aberdeen, Hoquiam, Grays Harbor County, Montesano and Cosmopolis for the purpose of providing 911 services within Grays Harbor County." Clerk's Papers at 33.

[2] To avoid confusion, we use Beverly Johnson's first name. We intend no disrespect.

[3] The NCIC is "an electronic clearinghouse of crime data that can be tapped into by virtually every criminal justice agency nationwide." *FBI—National Crime Information Center*, FED. BUREAU OF INVESTIGATION, http://www.fbi.gov/about-us/cjis/ncic/ncic (last visited Oct. 25, 2011).

number of her vehicle. CP at 34. The Beaverton Police Department did not request "automatic notification of any sighting of [Beverly's] vehicle." CP at 83.

¶3 At 8:41 PM, Tyler Trimble advised a Grays Harbor 911 operator that he was driving on a Washington state highway and observing a car driving erratically in front of him at about 20 miles per hour below the speed limit. Trimble reported the vehicle's color, license plate number, location, slow speed, and erratic movement. Because the vehicle was travelling on a state highway, Grays Harbor 911 transferred Trimble to the Washington State Patrol (WSP), to whom Trimble repeated the same information.

¶4 WSP advised Trimble that it was going to "notify troopers." CP at 96. Trimble stayed on the line as the erratic vehicle turned off the state highway into the city of Elma; Trimble continued on the state highway. When the call between WSP and Trimble ended, WSP put out a dispatch to local patrol that "the erratically driven [vehicle] just enter[ed] Elma at this time, slow rate lane travel, NCIC indicates that this vehicle is associated with a missing person endangered and a seizure history." CP at 97. Four WSP troopers acknowledged this call.

¶5 WSP also advised Grays Harbor 911 that the reported vehicle was then in Elma and that "NCIC shows that vehicle [is] associated with a missing and endangered person who has a history of seizures." CP at 61. Neither WSP nor Grays Harbor 911 passed on this information to Trimble.[4] About one and a half weeks after the Beaverton Police Department reported Beverly missing, Grays Harbor Sheriff's Department deputies discovered her vehicle and her body near Wynoochee Lake Dam in the Olympic National Forest.

---

[4] According to Trimble, he "would have stayed with the vehicle, providing updated information until an available patrol unit could contact the vehicle" if he "had been informed that the vehicle was associated with a Missing/Endangered person." CP at 92.

## II. Procedure

¶6 As the personal representative of Beverly's estate, Johnson sued the State, Grays Harbor County, and Grays Harbor 911.[5] The complaint alleged that (1) the WSP's and Grays Harbor County's failures to tell Trimble that Beverly "had been listed as Missing and Endangered" was an "error[ ]" that "proximate[ly] cause[d]" and "substantially contributed" to Beverly's death; (2) "[a]s a proximate result of the errors [Beverly] suffered pain, anguish, fear, hunger, thirst and exposure to the elements, to her damage in the amount of $500,000"; and (3) "[a]s a result of the death of [Beverly], her husband, Del[ ] Johnson, has suffered loss of mutual love, affection, companionship, society and consortium, all to his damage in the amount of $2,500,000." CP at 4-5.

¶7 The State, Grays Harbor County, and Grays Harbor 911 moved for summary judgment, arguing that the public duty doctrine precluded Johnson's claims. In opposition, Johnson argued that the public duty doctrine did not apply and that "[t]he public duty doctrine should be abrogated." CP at 107. The trial court granted summary judgment to the Defendants. Johnson appeals.

## ANALYSIS

¶8 Johnson argues both that the public duty doctrine does not preclude his claims against the Defendants and that we should abrogate the public duty doctrine. His first argument fails. We decline to address his second argument, which would require us to ignore binding Supreme Court precedent.

### I. Public Duty Doctrine Applies

¶9 Johnson argues that his action falls under one or more exceptions to the public duty doctrine and, therefore,

---

[5] Johnson originally sued the City of Beaverton as a named defendant. He later amended his complaint to substitute Grays Harbor 911 for Beaverton.

the superior court erred in dismissing his lawsuit on summary judgment. We disagree.

## A. Standard of Review

¶10 When reviewing a summary judgment motion, we view the case from "the position of the trial court." *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). In so doing, we review the trial court evidence contained in the pleadings, affidavits, admissions, and other properly presented material. *Chase v. Daily Record, Inc.*, 83 Wn.2d 37, 42, 515 P.2d 154 (1973) (quoting *Leland v. Frogge*, 71 Wn.2d 197, 200, 427 P.2d 724 (1967)). Summary judgment is proper if pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the nonmoving party, show there is no genuine issue of material fact and demonstrate that the moving party is entitled to judgment as a matter of law. *Bratton v. Welp*, 145 Wn.2d 572, 576, 39 P.3d 959 (2002); CR 56(c). In a negligence action, determining whether the defendant owed an actionable duty to the plaintiff represents a question of law, which we review de novo. *Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006).

## B. Public Duty Doctrine

¶11 In order to maintain a negligence action, a plaintiff must establish a duty of care that runs from the defendant to the plaintiff. *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988). The public duty doctrine serves "as a framework for courts to use when determining when a governmental entity owes either a statutory or common law duty to a plaintiff suing in negligence." *Cummins*, 156 Wn.2d at 853. According to the public duty doctrine,

> In negligence actions against a government entity, . . .
>
>> . . . no liability may be imposed . . . unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general."

*Cummins*, 156 Wn.2d at 852-53 (quoting *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468 (1983), *overruled on other grounds by Taylor*, 111 Wn.2d at 168)).[6] Johnson concedes that the public duty doctrine precludes imposition of liability on Defendants for allegedly negligently failing to find a missing and endangered person such as Beverly because this is a duty that Defendants owed to the public in general. Nevertheless, Johnson contends that once Trimble spoke to the Grays Harbor 911 and to State dispatchers, and the dispatchers learned that Beverly "was missing and endangered," (1) Defendants' "duty was no longer to the public in general[,] [i]t was to [Beverly]"; and (2) Defendants breached this duty. Br. of Appellant at 9.

## C. Exceptions to Public Duty Doctrine

¶12 In order to establish that Defendants owed Beverly a duty, Johnson had to show that one of four exceptions to the public duty doctrine applied: (1) legislative intent; (2) a failure to enforce; (3) the rescue doctrine; or (4) a special relationship. *See Cummins*, 156 Wn.2d at 853 n.7. "If one of these exceptions applies, the government will be held as a matter of law to owe a duty to the individual plaintiff or to a limited class of plaintiffs." *Cummins*, 156 Wn.2d at 853. Johnson argues that "[t]his case fits at least two of these and should fit all four." Br. of Appellant at 10. We examine each in turn.

### 1. Legislative Intent

¶13 "The traditional public duty rule of nonliability does not apply where a regulatory statute . . . evidences a clear legislative intent to identify and protect a particular and circumscribed class of persons." *Honcoop*, 111 Wn.2d at

---

[6] *See also J&B Dev. Co.*, 100 Wn.2d at 303 ("[A] duty to all is a duty to no one.").

188.[7] Johnson contends that the Legislature intended RCW 70.96A.120(2) to protect persons such as Beverly. Br. of Appellant at 11-13. Subject to certain exceptions, RCW 70.96A.120(2) provides, in part:

> [Any] person who appears to be incapacitated or gravely disabled by alcohol or other drugs and who is in a public place or who has threatened, attempted, or inflicted physical harm on himself, herself, or another, shall be taken into protective custody . . . as soon as practicable, but in no event beyond eight hours brought to an approved treatment program for treatment. If no approved treatment program is readily available he or she shall be taken to an emergency medical service customarily used for incapacitated persons.

Johnson concedes that Defendants did not know whether Beverly was impaired by drugs or alcohol. Nevertheless, he asserts that Defendants knew that she was "seriously impaired"[8] and, therefore, the statute required them to assist her. The State counters that RCW 70.96A.120(2) has "absolutely no application to the facts of this case."[9] Br. of Resp't (State) at 14. We agree with the State.

¶14 RCW 70.96A.120(2) does not "by its terms evidence[ ] a *clear legislative intent* to identify and protect" persons such as Beverly. *Honcoop*, 111 Wn.2d at 188; *see also Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 929, 969 P.2d 75 (1998). As our Supreme Court has explained, RCW 70.96A.120(2) is "narrowly drawn so as to reach only

---

[7] *See also Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 929, 969 P.2d 75 (1998) (stating that a statute must, *"by its terms*, evidence[ ] a *clear legislative intent* to identify and protect a particular and circumscribed class of persons" (emphasis added)).

[8] Br. of Appellant at 12.

[9] Grays Harbor County and Grays Harbor 911 "adopt the State of Washington's argument with respect to the Public Duty Doctrine." Br. of Resp't (Grays Harbor County & Grays Harbor 911) at 4. Grays Harbor County and Grays Harbor 911 also argue that Grays Harbor 911's conduct was not a "proximate[ ] cause" of Beverly's death. Br. of Resp't (Grays Harbor County & Grays Harbor 911) at 4. We note, however, that the superior court did not base its summary judgment orders on causation. And, because we affirm on grounds the superior court did address, we need not address causation on appeal.

certain individuals incapacitated by alcohol and in need of treatment." *Hontz v. State*, 105 Wn.2d 302, 307, 714 P.2d 1176 (1986). And RCW 70.96A.120(2) specifically excludes "a person who may be apprehended for possible violation of laws relating to driving or being in physical control of a vehicle while under the influence of intoxicating liquor or any drug." That Beverly was "driving . . . a vehicle" while apparently intoxicated placed her outside the ambit of RCW 70.96A.120(2). Thus, the "legislative intent" exception to the public duty doctrine does not apply here.

### 2. Failure To Enforce

¶15 The "failure to enforce" exception to the public duty doctrine occurs "where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect." *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). Johnson relies on RCW 70.96A.120(2) to support this exception. But, as we explain above, Beverly was not within the class that RCW 70.96A.120(2) protects. Thus, the "failure to enforce" exception does not apply here.

### 3. Rescue

¶16 The "rescue" exception applies if "a governmental entity or its agent [(1)] undertakes a duty to aid or warn a person in danger and [(2)] fails to exercise reasonable care, and [(3)] the offer to render aid is relied upon by either the person to whom the aid is to be rendered or by another who, as a result of the promise, refrains from acting on the victim's behalf." *Chambers-Castanes v. King County*, 100 Wn.2d 275, 285 n.3, 669 P.2d 451 (1983). As we have explained, "Integral to this exception is that the rescuer, including a state agent, *gratuitously* assumes the duty to warn the endangered parties of the danger and breaches

this duty by failing to warn them." *Babcock v. Mason County Fire Dist. No. 6*, 101 Wn. App. 677, 685, 5 P.3d 750 (2000) (*Babcock* I), *aff'd*, 144 Wn.2d 774, 30 P.3d 1261 (2001) (*Babcock* II).

¶17 Johnson contends that the "rescue" exception controls here because Trimble "refrained from aiding [Beverly] further [when Defendants] failed to tell him she was missing and endangered." Br. of Appellant at 14. The State argues that the "rescue" exception does not apply because "no 'assurances' (offer to render aid) of any kind were given to Mr. Trimble which caused him to abandon or not to attempt a 'rescue.'" Br. of Resp't (State) at 12. We agree with the State.

¶18 In *Babcock* I, we held that a volunteer fire fighting district did not *"gratuitously"* assume fighting a house fire and, therefore, could not undertake a duty to aid or to warn specific individuals, including the home owners. *Babcock* I, 101 Wn. App. at 686. We relied on former RCW 52.02.020 (1991), which stated in pertinent part that fire protection districts must provide fire prevention, fire suppression, and emergency medical services "for the protection of life and property." We concluded that fire districts protected *"all* citizens, including, but not limited to," the *Babcock* plaintiffs. *Babcock* I, 101 Wn. App. at 686.

¶19 Here, Grays Harbor 911 did not make a gratuitous offer to render aid: It merely answered "good Samaritan" Trimble's call and then transferred it to the State. Thus, the "rescue" exception does not apply to Grays Harbor County and Grays Harbor 911.

¶20 After Grays Harbor 911 transferred the information to the State, the State then informed Trimble that it would "notify troopers," which it did. CP at 96. Johnson has not established that these actions by the State amounted to a gratuitous offer to render aid to specific citizens, such as Beverly, as opposed to a general promise to render aid that the State made as part of its duty to *"all* citizens." *See Babcock* I, 101 Wn. App. at 686. The Legislature has given the State "such police powers and duties as are vested in

sheriffs and peace officers generally." RCW 43.43.030. RCW 36.28.010(6) provides that county sheriffs "[s]hall keep and preserve the peace in their respective counties." RCW 10.93.070(2) provides that a peace officer "may enforce the traffic or criminal laws . . . [i]n response to an emergency involving an immediate threat to human life or property." In light of these statutes and the accompanying general public duties that they impose on the State, the State's promise to Trimble to "notify troopers," in response to his call, was not a gratuitous offer to render aid. *See Babcock* I, 101 Wn. App. at 686.

¶21 Because Defendants cannot establish that the State's promise to notify the troopers was gratuitous, the first element of the "rescue" exception, we need not address the second element, "reasonable care"—whether Defendants' failure to inform Trimble about Beverly's NCIC status constituted a failure to exercise reasonable care. *See Chambers-Castanes*, 100 Wn.2d at 285 n.3. Thus, the "rescue" exception does not apply here.

### 4. Special Relationship

¶22 The "special relationship" exception to the public duty doctrine applies when

"(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff."[10]

*Cummins*, 156 Wn.2d at 854 (internal quotation marks omitted) (quoting *Beal v. City of Seattle*, 134 Wn.2d 769, 785, 954 P.2d 237 (1998)). A "plaintiff can establish privity

---

[10] Stated differently, " 'It is only where a direct inquiry is made by an individual and incorrect information is clearly set forth by the government, the government intends that it be relied upon and it is relied upon by the individual to his detriment, that the government may be bound.' " *Babcock* II, 144 Wn.2d at 789 (quoting *Meaney v. Dodd*, 111 Wn.2d 174, 180, 759 P.2d 455 (1988)).

[however] without having to prove the plaintiff herself communicated with the government entity." *Cummins*, 156 Wn.2d at 854 (citing *Bratton*, 145 Wn.2d at 577). But the plaintiff must "*specifically s*[*eek*]" and the government must "*expressly g*[*i*]*ve*" assurances indicating the government "would act in a specific manner." *Babcock* II, 144 Wn.2d at 789, 791.

¶23 Johnson "concedes that . . . he cannot qualify for the 'special relationship' exception to the public duty doctrine." Br. of Appellant at 16. Yet, in his reply brief, he "urges the court to hold that the present facts effectively satisfy the 'special relationship' exception." Reply Br. of Appellant at 10. We do not address issues that an appellant raises for the first time in a reply brief. *Stanzel v. City of Puyallup*, 150 Wn. App. 835, 851, 209 P.3d 534 (2009). RAP 10.3(c) requires that a reply brief "be limited to a response to the issues in the brief to which the reply brief is directed." Accordingly, we accept Johnson's concession that he does not qualify for the "special relationship" exception to the public duty doctrine, and we do not further address his new argument that the facts of this case somehow, nevertheless, constitute a form of substantial compliance with this exception's requirements.[11] Thus, the "special relationship" exception does not apply here.[12]

---

[11] More specifically, Johnson contends that (1) "the connection between Defendants and [Beverly] through Mr. Trimble certainly set [Beverly] apart from the general public," and (2) "Mr. Trimble relied on Defendants' failure to tell him [that Beverly] was missing and endangered, and that reliance caused [Beverly's] death." Reply Br. of Appellant at 10-11. The State counters that "no assurances of any kind were given," thus precluding application of the special relationship exception. Br. of Resp't (State) at 12.

[12] Nor has Johnson established that the State owed "good Samaritan" Trimble some sort of duty to report back to him, especially after it followed up on its promise to inform troopers about Beverly's situation.

We further note that Trimble had originally called Grays Harbor 911, and Grays Harbor 911 had referred his call to the WSP, which had taken Trimble's information and put out a dispatch to local WSP patrol. Even assuming, without deciding, that Johnson had standing to assert a claim against the State for allegedly breaching a duty to inform Trimble about this post-911 follow up, there is no legal or factual support for Johnson's argument that the State owed a duty

## II. Request To "Abrogate" the Public Duty Doctrine

¶24 Finally, Johnson argues that we should "abrogate[ ]" the public duty doctrine altogether. Br. of Appellant at 18. We decline. Until such time as our Supreme Court overrules itself, we are bound by its holding that the public duty doctrine applies in the state of Washington. *See Babcock* II, 144 Wn.2d at 784-86; *State v. Burkins*, 94 Wn. App. 677, 701-02, 973 P.2d 15, *review denied,* 138 Wn.2d 1014 (1999). Thus, we decline Johnson's invitation to dismantle the public duty doctrine.

¶25 We affirm.

Quinn-Brintnall and Van Deren, JJ., concur.

Review denied at 173 Wn.2d 1027 (2012).

---

to Trimble to divulge Beverly's private medical condition and then to conscript "good Samaritan" Trimble into assisting law enforcement.