FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 42

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TANYA and TOMMY RIDER, wife and husband and the marital community composed therof, | No. 43363-0-II |
| Appellants, | |
| v. | |
| KING COUNTY in its capacity as the KING COUNTY SHERIFF'S DEPARTMENT, | UNPUBLISHED OPINION |
| Respondent. | |

PENOYAR, J. — Tanya and Tommy Rider appeal the summary judgment dismissal of their negligence complaint, arguing that King County owed them a duty of care under exceptions to the public duty doctrine. Because the special relationship and rescue exceptions to the public duty doctrine do not apply under the facts presented, we affirm.

## FACTS

On the morning of September 20, 2007, Tanya Rider left her overnight job and began driving home. Tanya's[1] vehicle left State Route 169 and landed in a ravine, where it was not visible from the roadway.

Tommy learned that his wife was missing on Saturday, September 22, when Tanya's employer called to tell him that Tanya had not reported for her scheduled shift. Tommy had last spoken with Tanya by phone on Wednesday evening, September 19.

---

[1] We will refer to the Riders by their first names for clarity.

After receiving the call from her employer, Tommy called 911 to report that Tanya was missing. After his call was transferred several times to the proper operator, Aaron Siegrist asked Tommy a series of questions to determine whether Tanya met the criteria for a missing persons report. Tommy said that he had checked local hospitals, but Siegrist told Tommy that he would also need to contact area jails before a missing person report could be taken, and Siegrist advised Tommy to continue to check area hospitals and look for activity on Tanya's bank accounts.

Tommy called 911 again on Sunday, September 23, and spoke with operator Thomas Lowe. At the same time, Tommy was on the phone with the Honda dealer to determine whether Tanya's car contained a vehicle locator. Lowe told Tommy to finish that call and call him back. When Tommy called Lowe again, he reported that the car did not have a vehicle locator, and Lowe obtained the information needed to file a missing person report. Lowe gave Tommy a case number and told him that Tanya's information would be entered into a nationwide computer system so that, if she were found and a check was done on her name, she would be identified as a missing person and Tommy would be contacted. Lowe called Tommy later that day to obtain additional vehicle information and to tell him that an officer would be sent to his home.

King County Deputy Sheriff Christopher Cross came to the Rider home on Sunday evening. He searched the residence at Tommy's invitation and gave Tommy a business card with instructions to call the Major Crimes Unit the next morning.

On Monday, September 27, Janet Rhodes, who investigates missing persons for the King County Sheriff's Office, called Tommy after reviewing the report about Tanya. According to Rhodes, Tommy told her that Tanya was the only person with access to a USAA bank account

and a Nordstrom VISA. According to Tommy, he told Rhodes that he lacked only online access to the USAA account. He also claimed that Rhodes told him that if something had gone wrong with Tanya, King County would find her.

Tommy went back to work after speaking with Rhodes, but he continued to drive Tanya's route to and from work and to their other property, and he posted flyers about her disappearance.

Rhodes contacted USAA and Nordstrom, and each confirmed that Tanya was the only person with access to the accounts.[2] She spoke with Tanya's supervisor, tried unsuccessfully to reach Tanya by calling her cell phone, and contacted Tanya's cellular provider, Verizon. Verizon's automated message reported that information would not be released absent a subpoena or court order. On both Monday and Tuesday, Rhodes learned of activity on the USAA account, and she came to believe that Tanya was not actually missing, though she continued her investigation.

A further conversation with Tommy on Wednesday clarified that he also had access to the USAA account. Tommy told Rhodes that he had misunderstood her earlier question about account access because he was so exhausted. He explained that he was responsible for the recent USAA account activity.

In light of this information, Rhodes asked her supervisor if Tanya's cell phone records could be obtained, and a detective requested Tanya's records from Verizon on Thursday, September 27. The records were requested due to exigent circumstances with a warrant to follow. A few hours after obtaining the cell phone information, which showed the cell tower location of her last cell phone activity, King County deputies found Tanya's car. Tanya was inside and had survived.

---

[2] A USAA representative later told Tommy that there had been no such communication.

In September 2010, the Riders sued King County for negligence, asserting that the County had breached its duty to take reasonable measures to locate Tanya and had thereby caused both her and Tommy to sustain damages. The trial court granted King County's motion for summary judgment and dismissed the complaint with prejudice.

## ANALYSIS

### I. STANDARD OF REVIEW

When reviewing an order on summary judgment, we engage in the same inquiry as the trial court. *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012). Summary judgment is proper when the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006); CR 56(c). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784, 30 P.3d 1261 (2001). The party opposing summary judgment "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). In a negligence action, whether an actionable duty was owed to a plaintiff is a threshold determination and a question of law that we review de novo. *Munich*, 175 Wn.2d at 877.

### II. PUBLIC DUTY DOCTRINE

Governmental entities are liable for damages arising out of their tortious conduct, or the tortious conduct of their employees, "to the same extent as if they were a private person or

corporation." *Cummins*, 156 Wn.2d at 853 (quoting RCW 4.96.010(1)). When the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular and was not the breach of a duty owed to the public in general. *Babcock*, 144 Wn.2d at 785. "[A] duty owed to all is a duty owed to none." *Beal v. City of Seattle*, 134 Wn.2d 769, 784, 954 P.2d 237 (1998). The public duty doctrine is a "focusing tool" used to determine whether the defendant owed a duty to the public or a particular individual. *Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006).

There are four exceptions to the public duty doctrine: (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship. *Munich*, 175 Wn.2d at 879. If any one of the exceptions applies, the government is held as a matter of law to owe a duty to the plaintiff. *Munich*, 175 Wn.2d at 879. At issue in this appeal are the special relationship and rescue exceptions.

A.    SPECIAL RELATIONSHIP EXCEPTION

A special relationship between a governmental agency and a plaintiff will exist and thereby give rise to an actionable duty if three elements are established: (1) direct contact or privity between the agency and the plaintiff that sets the plaintiff apart from the general public, (2) an express, specific assurance given by the agency, and (3) justifiable reliance on the assurance by the plaintiff. *Munich*, 175 Wn.2d at 879; *Meaney v. Dodd*, 111 Wn.2d 174, 178-79, 759 P.2d 455 (1988). Where duty is analyzed under the special relationship exception, courts look to the manner and extent of contact between the government official and the plaintiff and to

5

how explicit were the assurances of aid allegedly created thereby. *Cummins*, 156 Wn.2d at 860; *see also Johnson v. State*, 164 Wn. App. 740, 753, 265 P.3d 199 (2011) (plaintiff must seek and government must expressly give assurances indicating that it will act in a specific manner), *review denied*, 173 Wn.2d 1027 (2012).

The County concedes that Tommy's direct contact with the 911 operators and Rhodes satisfies the privity requirement. *See Cummins*, 156 Wn.2d at 854-55 (privity established by showing that 911 operator affirmatively communicated some assurance that assistance would be sent). The County also concedes that for the purposes of this appeal, it must assume that Rhodes told Tommy that "[i]f something had gone wrong, that they would locate Tanya and find out what happened." Clerk's Papers (CP) at 58; *see Babcock*, 144 Wn.2d at 784 (when reviewing summary judgment order, all facts are considered in the light most favorable to the nonmoving party).[3]

The Riders argue that Rhodes represented that she was actively looking for Tanya and implied that she was using all reasonable means in doing so. They contend that with this statement, the County assumed a duty to use reasonable care in its investigation.

The County responds that Rhodes's alleged statement was neither an express assurance that she would take specific steps to search for Tanya nor an assurance that she would employ specific methods to find Tanya within a specific timeline. The County argues that at most, Rhodes made implied assurances that are insufficient to support the special relationship exception.

---

[3] The Riders relied on this as the only express assurance in responding to the County's motion for summary judgment. They now claim in their reply brief that Detective Cross made similar assurances, but the record does not support this claim.

As support, the County cites *Cummins*, where the Supreme Court held that the absence of an express assurance from a 911 operator that medical assistance would be dispatched precluded the court from finding as a matter of law that the plaintiff had established an actionable duty against the county. 156 Wn.2d at 855. Even if the nature of the 911 system provided an inherent assurance that medical assistance would be forthcoming once a call was placed, any such inherent assurance, like an implied assurance, could not provide a sufficient basis for finding an actionable duty under the special relationship doctrine. *Cummins*, 156 Wn.2d at 856. The County also cites *Babcock*, where the Supreme Court again rejected the argument that implied assurances could give rise to a governmental duty. 144 Wn.2d at 791. In *Babcock*, a firefighter's statement to a homeowner that the firefighters would take care of his property was not an express assurance that she or the other firefighters would act in a specific manner. 144 Wn.2d at 791.

The Riders maintain that Rhodes's assurance of aid is more analogous to the following assurances from a 911 operator that supported the special relationship exception in *Beal*:

> 911: Okay. Well I'll tell you what, we're going to send somebody there. Are you going to wait in number 4 [another apartment] until we get there?
> CALLER: I'll be waiting outside in the front with my mom.
> 911: Okay. We'll get the police over there for you okay?
> CALLER: Alright [sic], thanks.

134 Wn.2d at 785. With these statements, the 911 operator gave express assurances that police would be dispatched to assist. *Beal*, 134 Wn.2d at 785. The Riders also rely on *Munich*, where a 911 operator twice assured a caller who was being threatened by a neighbor that a deputy was on his way. 175 Wn.2d at 875. The court again found express assurances promising action. *Munich*, 175 Wn.2d at 885.

7

We find *Beal* and *Munich* distinguishable. In both cases, an express promise of specific future action was made. Here, there was only the general statement that Tanya would be found if something bad had happened, with no mention of any specific future action.

We are persuaded that *Babcock* is more analogous and bars any conclusion that the express or explicit assurance needed to establish a special relationship was made in this case. In his deposition, Tommy acknowledged that Rhodes and the 911 operators did not advise him that they were taking specific actions to find Tanya and did not guarantee that they would find her. "No one guaranteed me that they would find Tanya. . . . No, they did not give me expressed guarantees. They did give me the impression they were looking." CP at 58-59. While he "assumed they would use all reasonable methods" to locate Tanya, he neither sought nor received express assurances of specific conduct. CP at 301.

Moreover, even if we were to conclude that Tommy did receive a promise of specific conduct, we could not conclude that he relied on that promise to his detriment.

Whether a party justifiably relies on information is a question of fact generally not amenable to summary judgment. *Babcock*, 144 Wn.2d at 792. For the government to be bound, the plaintiffs must rely on the assurance to their detriment. *Babcock*, 144 Wn.2d at 793. In *Babcock*, the facts did not show detrimental reliance because the homeowner ignored the alleged assurance from the fire fighter and attempted to move his truck. "He did not discontinue his efforts to salvage his property because of the statements made by the fire fighter." *Babcock*, 144 Wn.2d at 793. By contrast, detrimental reliance was shown in *Beal*, where the victim went outside to wait after being assured that police protection was forthcoming, and was then shot by the estranged husband who had prompted the 911 call. 134 Wn.2d at 786.

The Riders assert that Tommy went back to work on Monday after talking to Rhodes, confident that the County would find his wife. Tommy also continued to drive Tanya's route to and from work, however, in addition to posting flyers and calling her cell phone. The Riders do not describe any additional action Tommy would have taken but for Rhodes's statement, and they do not show that any such action by Tommy would have made any difference in the investigation. Tommy admitted in his deposition that the County never prevented him from doing anything to find Tanya and that Rhodes told him "the more help, the better." CP at 61. When asked in his deposition what else he could have done in searching for Tanya, he stated that he could have hired a private investigator and added, "But as far as what I could have done differently, I don't know." CP at 61. There is no evidence that Tommy could have obtained the cell phone records on his own without law enforcement involvement. Consequently, the Riders can show neither the detrimental reliance nor the specific assurance that the special relationship exception requires.

B.    RESCUE EXCEPTION

The Riders argue in addition that the County assumed a duty to find Tanya under the rescue exception to the public duty doctrine. This exception applies if a governmental entity (1) undertakes a duty to aid a person in danger, (2) fails to exercise reasonable care, and (3) the offer to render aid is relied on by either the person to whom the aid is to be rendered or by another who, as a result of the promise, refrains from acting on the victim's behalf. *Johnson*, 164 Wn. App. at 750. "Integral to this exception is that the rescuer, including a state agent, *gratuitously* assumes the duty to warn the endangered parties of the danger and breaches this duty by failing to warn them." *Babcock v. Mason County Fire Dist. No. 6*, 101 Wn. App. 677, 685, 5 P.3d 750 (2000), *aff'd on other grounds*, 144 Wn.2d 774 (2001).

9

In *Babcock*, the rescue exception did not apply because the firefighting district did not gratuitously choose to fight a house fire. 101 Wn. App. at 686. Rather, the district was established for the very purpose of fighting fires and protecting the property of all citizens. *Babcock*, 101 Wn. App. at 686. In *Johnson*, the exception did not apply when the Washington State Patrol told a concerned citizen it would notify troopers about his report of an erratic driver. 164 Wn. App. at 751. The State's action was a general promise to render aid made as part of the State's duty to all citizens and not a gratuitous offer to aid a specific citizen. *Johnson*, 164 Wn. App. at 751.

The County asserts that a missing person investigation is a core police function and that it did not gratuitously assume a duty to rescue Tanya. The Riders respond that if the County did not assume a duty based on express assurances under the special relationship exception, it gratuitously assumed the duty to search for Tanya, and the rescue doctrine applies. As we recognized in *Babcock*, this reasoning allows the rescue exception to swallow up the public duty doctrine, and we reject it. 101 Wn. App. at 686. Rhodes's performance of a public duty to investigate missing persons was not a legal duty to find Tanya.

Moreover, there again is no evidence that Tommy refrained from acting on Tanya's behalf as a result of the County's action. Even though he returned to work, he kept searching on his own. Consequently, the rescue exception fails for this reason as well. *See Osborn*, 157 Wn.2d at 25 (reliance is the linchpin of the rescue exception).

Finally, the Riders argue that there are issues of fact that cannot be resolved on summary judgment, and they point to a declaration from a former police officer who concludes that the County's investigative efforts showed a breach of the standard of care. Having found no duty,

we need not explore the issue of breach, and we affirm the trial court's summary dismissal of the Riders' complaint.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Johanson, A.C.J.

_____
Bjorgen, J.