# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARKY VANDELAY LLC d/b/a RUCKUS RECREATIONAL, a Washington limited liability company,<br><br>Appellant,<br><br>v.<br><br>THE WASHINGTON STATE LIQUOR AND CANNABIS BOARD, a Washington State agency,<br><br>Respondent. | No. 60553-8-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—Arky Vandelay LLC, d/b/a Ruckus Recreational, sought to relocate its cannabis retail store to Belltown in Seattle. However, another retailer, Washington OG, had submitted a location change request for the same area six months earlier. Under the City of Seattle's (the City) local zoning ordinances strictly limiting the number of licenses in a geographic area, Washington OG had priority if a license in the area became available.

Arky proceeded with its relocation, believing the City might grant a variance to the ordinance and that the Washington State Liquor and Cannabis Board should forfeit Washington OG's license for not being fully operational, even though Arky had received communications from both the Board and the City indicating otherwise. Ultimately, the City denied Arky's request for a variance, and the Board concluded Washington OG's license was exempt from forfeiture. Therefore, Arky could not relocate to the same area in Belltown.

Arky sued the Board for tortious interference with a business expectancy and negligence, asserting the Board improperly declined to forfeit Washington OG's license. Arky and the Board filed cross-motions for summary judgment, and Arky moved to strike a declaration of the Board's deputy director. The trial court denied both Arky's motion to strike the declaration and its motion for partial summary judgment, and the trial court granted summary judgment in favor of the Board, dismissing Arky's claims.

Arky appeals the trial court's dismissal of its claims and denial of its motion to strike. Applying the forfeiture statute and regulation to the undisputed facts, we conclude that the Board appropriately declined to forfeit Washington OG's license. Because the success of Arky's claims for interference with a business expectancy and negligence depend on its argument that the Board should have forfeited Washington OG's license, the trial court was correct to grant summary judgment in the Board's favor and dismiss both claims. We need not rely on or address the contested declaration. We affirm.

FACTS

I. BACKGROUND

The Washington State Liquor and Cannabis Board is the state agency responsible for regulating cannabis, including issuing and revoking state retail licenses. Initiative 502, LAWS OF 2013, ch. 3, §§ 1, 4. A cannabis retailer in Seattle must obtain both a state license from the Board and a separate local authorization from the City to operate. RCW 69.50.345; RCW 69.50.331; SEATTLE MUNICIPAL CODE 23.42.058.C.5. Under the City of Seattle's municipal zoning code, no more than two cannabis retailers are permitted to operate within 1,000 feet of each other (the "Dispersion Rule"). Clerk's Papers (CP) at 447; SEATTLE MUNICIPAL CODE 23.42.058.C.5.

A cannabis retailer can apply to the Board to change the location of their business. WAC 314-55-125. During the change of location process, the Board does not consider local ordinances, meaning it can approve a relocation at the state level even if the retailer lacks local government approval to operate at the new site. But the licensee must also obtain local approval to actually operate at the new site. *See* RCW 69.50.345, .331.

When a licensee applies to the Board to change location, the Board issues a notice. Under the City's interpretation of the dispersion ordinance, a cannabis retailer exists in its new location as of the date the Board issues the notice. Although a notice does not guarantee final approval, the City prioritizes applications for purposes of the dispersion ordinance based on the date the Board's notice is issued, not the date the relocation is actually approved.

At the time of the summary judgment hearing, Samuel Burke was the owner of Arky, and he held two cannabis retail licenses. Burke acquired the second license, at issue in the case, from another company in late 2018, intending to relocate the license.

Belltown is a high-traffic area located near popular tourist attractions, making it a desirable location for retail businesses. In 2019, two cannabis retailers—Herban Legends and Have a Heart—were operating in Belltown. Accordingly, under the dispersion ordinance, no additional retailers could open in the area. However, in December 2019, the Board suspended Herban Legends' license due to multiple regulatory violations, and permanent cancellation of the license appeared imminent. This would leave only one operating cannabis retailer in Belltown.

The potential cancellation of Herban Legends' license created an opening in Belltown that attracted interest from competing cannabis retailers, including both Washington OG and Arky. Washington OG submitted an application to relocate and received a notice of change of location

3

from the Board in January 2020. On July 2, 2020, Arky secured a five-year lease in anticipation of the move, with rent starting at $18,576.36 per month and options to extend for an additional 15 years. Arky then submitted an application to relocate to Belltown later in July 2020. Critically, the Board issued Washington OG's notice of change of location six months before it issued Arky's notice on July 23, 2020. As a result, when Herban Legends ultimately lost its license and closed, Washington OG had first priority to relocate to the Belltown area under the City's application of its dispersion ordinance.

## II. CANNABIS LICENSING PROCEDURE AND MONITORING

### A. The Dual Licensing Requirement

On August 4, 2020, the Board issued Arky a certificate of location compliance, confirming that its proposed Belltown site complied with state law. However, the Board expressly clarified that the certificate did not ensure the necessary compliance with local regulations.

On August 21, 2020, the City sent Arky a letter stating that Arky would not receive a cannabis business license due to concerns about the dispersion ordinance and the proximity of existing marijuana establishments. On August 27, 2020, the City sent a letter to both the Board and Arky objecting to the proposed location, again citing the dispersion ordinance and noting that both Have a Heart and Herban Legends were operating within 1000 feet of Arky's proposed location. In that same letter, the City informed Arky that Washington OG had applied to relocate to Belltown, also within 1000 feet of Arky's proposed location, and that its notice of change of location had been issued six months before Arky's.

Arky's owner, Burke, acknowledged in his deposition that the City's letter informed him how it prioritized applications. Burke was not dissuaded by the City's objection, believing that he

4

could get a variance from the City or challenge the application of the dispersion ordinance so Arky could still open. Burke also testified in his deposition that he "never actually believed that [Washington OG's owner] was going to open" a Washington OG store in Belltown and that "all [he had] to do [was] wait this guy out." CP at 735.

On October 22, 2020, the Board issued its approval of Arky's application to relocate. Arky proceeded to transfer its inventory to the Belltown location and permanently close its prior location, despite still needing a business license from the City to operate in Belltown. The Board also eventually approved Washington OG's application in January 2021 after various deficiencies in the application significantly extended the process.

B.      Forfeiture Statute and Regulatory Authorization

The legislature has enacted a statute requiring the Board to create rules to address the problem of retail cannabis licensees "sitting on" licenses without operating. CP 23. The legislature required the Board to develop a process for license revocation by forfeiture. *See* RCW 69.50.325. No cannabis license could be subject to forfeiture within the first nine months of receiving a license. RCW 69.50.325(3)(c)(ii)(A). At a minimum, the legislature required the Board to demand forfeiture of any cannabis retail license that was inoperative on or before 24 months after licensure, unless the delay in operation was due to circumstances beyond the licensee's control. RCW 69.50.325(3)(c)(ii)(B). But the legislature left it to the Board to determine what circumstances were beyond the licensee's control and therefore from license forfeiture. *Id*. The legislature also prohibited forfeiture if the retailer could not open due to local government action. RCW 69.50.325(3)(c)(i)(v)(B).

### III. WASHINGTON OG'S OPERATIONAL STATUS

A.      The Board's Monitoring Efforts

Since June 2018, the Board has had procedures in place for monitoring retailers reporting no sales activity. From 2018 until the Board approved its move to Belltown in January 2021, Washington OG operated a retail store in Ballard and reported nominal sales, ranging from zero to a few hundred dollars a month.

In November 2019, prior to Washington OG's efforts to relocate to Belltown, a Board data consultant responsible for tracking licensees' operational status contacted Washington OG's owner to ask why Washington OG had no sales in the previous seven-month period. The owner reported Washington OG had not been able to renew its city license due to a needed inspection it had just passed, and it would be open in a few weeks. There is no contrary evidence in the record as to the reason Washington OG did not operate for several months in 2019.

Following Washington OG's application to change location from Ballard to Belltown, the Board monitored its low sales from February 2020 to March 2020. Internal communications from the Board described Washington OG as a "non-operative retailer." CP at 124. In February 2020, a Board officer inspected the Washington OG store and found it locked and closed to the public. The officer also contacted Washington OG's owner. In March 2020, the officer returned and reported that "Washington OG has not satisfied the requirement/definition of operational," as it was only open by appointment and did not have hours of operation posted. CP at 111. The officer informed Washington OG's owner of these deficiencies and the criteria for being fully operational. In a follow-up visit less than a week later, the officer reported that the hours were posted and Washington OG met the minimal operational requirements.

The COVID-19 pandemic and its associated shutdowns began in March 2020, and Washington OG had no sales for the rest of 2020. Arky secured its lease and obtained its notice of change of location from the Board in July 2020. The Board did not impose negative consequences for inactivity on cannabis retailers who sought to relocate during the COVID-19 pandemic. *See* CP at 754. Although, perhaps unartfully worded, the Board's deputy director of licensing stated in her unchallenged second declaration, "I would have not pursued a Statement of Intent to Deny Change of Location Application because Washington OG's delay during that time was around the COVID-19 pandemic, where [the Board] decided at that time not to withdraw any applications which was consistently applied. CP at 754.

B.      Regulatory Delays and Forfeiture Challenge

Although the Board approved Washington OG's relocation in January 2021, Washington OG was unable to open at its new location in Belltown because the City did not immediately issue an occupancy permit. The proposed location failed to meet building code accessibility requirements. Throughout 2021, the Board monitored Washington OG's progress in meeting code requirements and remained in communication with Washington OG's owner, who indicated that approval from the City was imminent. Washington OG had zero sales in 2021.

When Washington OG was still unable to open in early 2022, Arky's owner, Burke, and his attorneys submitted complaints to the Board, arguing Washington OG's license should be forfeited. Burke's counsel also objected to the language of the forfeiture rule's exceptions.

In response, the Board opened a formal investigation into Washington OG in January 2022. The investigating officer contacted Washington OG, explained the forfeiture rule, and warned the license could be canceled if there was no valid reason for the inactivity. Washington OG's owner

7

responded with a projected opening timeline and documentation showing ongoing efforts to comply with city requirements.

The Board ultimately determined that Washington OG had been actively working to obtain the occupancy permit since January 2021, and that Washington OG remained exempt from forfeiture. The investigating officer concluded the delay was caused by city code requirements and the need to obtain an occupancy permit. As a result of this "action by the City," Washington OG's license was not forfeited, even though the code requirements predated the license. CP at 234. The Board notified Arky of this decision.

Shortly after, Arky applied to relocate its own state license from Belltown to Fremont, which the Board approved in July 2022.

## IV. ARKY'S LAWSUITS

### A.    Arky's Claims

In October 2022, Arky filed a lawsuit against the Board, alleging tortious interference with a business expectancy and negligence. Arky also alleged that the Board negligently failed to impose forfeiture on Washington OG, and that Arky was harmed as a result. Arky also filed a separate but similar lawsuit against the City.

Arky and the Board filed cross-motions for summary judgment. Arky moved for partial summary judgment, arguing there was no dispute that it met the "improper means" element of its tortious interference claim and the duty and breach elements of its negligence claim. CP at 353. The Board moved to dismiss both claims, arguing Arky failed to establish the first four elements of tortious interference, the public duty doctrine barred the negligence claim, and Arky failed to show causation for the negligence claim. In support of its motion, the Board submitted a declaration from its deputy director of licensing, who was also deposed. Arky moved to strike the

8

deputy director's declaration. With its reply, the Board submitted a second declaration from the deputy director, which Arky did not object to or move to strike.

B.     Summary Judgment

In October 2024, after a hearing, the trial court denied Arky's motion to strike the first declaration from the Board's deputy director. The trial court also granted the Board's motion for summary judgment and denied Arky's motion for partial summary judgment.

Arky moved for reconsideration, but the trial court denied the motion. Arky appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's summary judgment ruling de novo. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The court must view the facts and make reasonable inferences in the light most favorable to the nonmoving party, and the court must grant summary judgment if "'reasonable minds could reach but one conclusion.'" *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019) (quoting *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 478, 296 P.3d 800 (2013)).

II. FORFEITURE STATUTE AND REGULATION

The legislature required the Board to develop a process for the forfeiture of inactive cannabis licenses:

> The board shall adopt rules to establish a license forfeiture process for a licensed cannabis retailer that is not fully operational and open to the public within a specific period from the date of license issuance, as established by the board, subject to the following restrictions:

No cannabis retailer's license may be subject to forfeiture within the first nine months of license issuance; and

*The board must require license forfeiture* on or before twenty-four calendar months of license issuance if a cannabis retailer is not fully operational and open to the public, *unless* the board determines that *circumstances out of the licensee's control* are preventing the licensee from becoming fully operational and that, *in the board's discretion*, the circumstances warrant extending the forfeiture period beyond twenty-four calendar months.

RCW 69.50.325(3)(c)(ii)(A)-(B) (emphasis added). The statute also lays out circumstances when the Board may not require forfeiture for failure to be fully operational because of "*actions by the city*," including "[t]he adoption of an ordinance or regulation related to zoning, business licensing, land use, or other regulatory measure that has the effect of preventing a licensee from receiving an occupancy permit" or otherwise becoming operational. RCW 69.50.325(3)(c)(v)(B) (emphasis added).

In response, the Board adopted WAC 314-55-055, which makes a license subject to forfeiture if the retailer is not fully operational after 12 months. WAC 314-55-055(1) defines "fully operational":

Fully operational means the business meets the following criteria for at least 12 consecutive weeks within a 12-month period after issuance of the license:

The business is open to the public for a minimum of five hours a day between the hours of 8:00 a.m. and 12:00 midnight, three days a week;

The business posts hours of operation outside of the premises in the public view; and

The business reports monthly sales from the sale of cannabis products and pays applicable taxes.

WAC 314-55-055(1)(b)(i)-(iii). Thus, after the initial 12-month period, a licensed cannabis retailer cannot fail to meet the minimum requirements for full operation for more than 9 months in a 12-

month period unless an exception applies. *See* WAC 314-55-055(1)(b). Beyond reporting monthly sales, the regulation expresses no minimum sales requirement a retailer must meet to be considered "fully operational." *See* WAC 314-55-055(1)(b).

The forfeiture regulation reiterates the statutory exceptions related to coming into compliance with local ordinances and regulations. It provides that a cannabis retailer's license will not be subject to forfeiture if the licensee is not able to be fully operational "*based on actions by the city*…with jurisdiction over the licensed business," including "[t]he adoption of an ordinance or regulation related to zoning, business licensing, land use, *or other regulatory measure that has the effect of preventing a licensee from receiving an occupancy permit*" or which otherwise prohibits operation. WAC 314-55-055(2)(b) (emphasis added).

In addition, the regulation reiterates that the Board also has "sole discretion to grant exceptions" from forfeiture for circumstances beyond the licensee's control, such as a natural disaster. WAC 314-55-055(3)(a). For example, beyond the mandatory exemption recited above, the Board may exempt periods when a business is awaiting local government approval or when the licensee is in the process of relocating and chooses not to remain open to avoid continued operating costs.

### III. THE BOARD'S DECISION NOT TO FORFEIT WASHINGTON OG'S LICENSE

Central to Arky's claims of intentional interference with a business expectancy and negligence, Arky argues the Board failed to properly apply the forfeiture statute and regulation when it declined to forfeit Washington OG's retail license. We disagree.

A.     Arky's Interpretation of the Forfeiture Statute and Regulation

Arky misinterprets the forfeiture statute, so its expectation that the Board was required to enforce forfeiture against Washington OG was incorrect as a matter of law.

Arky argues that under the forfeiture statute and regulation, the Board was required to forfeit Washington OG's license. Arky relies in part on the word "must" in RCW 69.50.325(3)(c)(ii)(B) to interpret the statute to require automatic forfeiture, but that reading ignores the statute's embedded exceptions. Relevant here, RCW 69.50.325(3)(c)(v)(B) prohibits the Board from imposing forfeiture when local action, including zoning or other regulations, prevent a retailer from opening or becoming fully operational.

The Board's regulation implementing the statute also reflects the statutory exceptions. The regulation sets a one-year time period for a licensee to become operational, and it requires licensees to meet the minimum operating requirements for 12 consecutive weeks in the 12-month period thereafter. WAC 314-55-055(1)(a), (b). But under both the statute and the regulation, forfeiture is not required if local government action, such as zoning, permitting, or licensing, prevents a licensee from obtaining an occupancy permit. RCW 69.50.325(3)(c)(v). The regulation further gives the Board "sole discretion to grant exceptions" when there have been circumstances beyond the licensee's control. WAC 314-55-055(2)(b), (3)(a).

Here, Arky's claim of a business expectancy ripened at the earliest in July 2020 when it obtained a lease in Belltown and completed its request to the Board to relocate. *See, e.g., Greensun Group, LLC v. City of Bellevue,* 7 Wn. App. 2d 754, 771, 436 P.3d 397 (2019) (One element of a claim of interference with a business expectancy is the defendant's knowledge of the alleged expectancy).

12

As a matter of law, the Board had discretion under the statute and regulation to decline to forfeit Washington OG's license based in part on Washington OG's inability to operate during the COVID-19 pandemic during shutdowns in 2020, circumstances that were beyond Washington OG's control. Further, the Board followed both the statute and the regulation when it determined that beginning in January 2021 Washington OG was exempt from forfeiture while it was actively working with the City to comply with accessibility-related zoning codes to obtain an occupancy permit for its Belltown location. Washington OG was exempt from forfeiture during any time period while it was awaiting local government approval in Belltown. *See* RCW 69.50.325(3)(c)(v); WAC 314-55-055(2). Arky does not offer any evidence to the contrary. Arky points to no sufficient time period between July 2020 and the Board's decision not to forfeit Washington OG's license when Washington OG was not exempt from forfeiture under the statute and regulation.

Because there is no evidence that Washington OG was subject to forfeiture during the relevant time period because of the COVID-19 pandemic and then as it attempted to obtain local permits, Arky's argument that the Board improperly refused to forfeit Washington OG's license fails.

IV. ARKY'S TORTIOUS INTERFERENCE AND NEGLIGENCE CLAIMS FAIL

Both of Arky's claims rely on its argument that the Board improperly declined to forfeit Washington OG's license. In light of our conclusion above that this argument is incorrect, both of Arky's claims fail.

A.     Tortious Interference

A party claiming tortious interference must establish "'(1) the existence of a valid . . . business expectancy; (2) that [the defendant] had knowledge of that [expectancy]; (3) an

intentional interference inducing or causing . . . termination of the . . . expectancy; (4) that [the defendant] interfered for an improper purpose or used improper means; and (5) resultant damages.'" *Greensun,* 7 Wn. App. 2d at 768 (alterations in original) (quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006)). To meet all of these elements, Arky must rely on its argument that the Board had no choice under the law but to forfeit Washington OG's license. For the reasons explained above, this foundational argument fails.

Arky relies in part on *Greensun*, where a tortious interference claim survived summary judgment because the City of Bellevue arbitrarily reinterpreted its dispersion ordinance to change the way cannabis retail license applicants would be prioritized. 7 Wn. App. 2d at 775. The City did so after Greensun had submitted an application so that Greensun would not be prioritized for a cannabis license. *Id.* at 762. The City of Bellevue was not transparent about the prioritization law or its process with the involved retailers. *Id.* at 765.

Arky alleges that the Board's failure to apply the forfeiture rule, despite the acknowledged impact on Arky, was similarly arbitrary. However, unlike the City of Bellevue in *Greensun*, the Board here conducted a documented investigation; maintained timely, clear, and transparent communication with Arky; and adhered to the law as written and did not change its regulation midstream. When the Board issued Arky a certificate of location compliance, it expressly stated that the approval did not ensure compliance with the City's zoning codes. The City informed Arky on two separate occasions that the Belltown location would not be approved. The Board's clarity that it could not ensure the City's approval of Arky's relocation distinguishes this case from *Greensun*.

In sum, we conclude the trial court properly dismissed this claim on summary judgment.

B.    Negligence

The Board raised the public duty doctrine as a defense to Arky's negligence claim. We agree with the Board that the public duty doctrine bars Arky's negligence claim.

While the Washington Supreme Court has limited the scope of the public duty doctrine, the doctrine is still available as an affirmative defense to negligence. *Johnson v. State,* 164 Wn. App. 740, 743, 265 P.3d 199 (2011); *Cummins v. Lewis County*, 156 Wn.2d 844, 848, 133 P.3d 458 (2006); *see also, Norg v. City of Seattle*, 200 Wn.2d 749, 752, 522 P.3d 580 (2023). Under the public duty doctrine, the government may be held liable for negligence only if it breaches a duty owed to a particular individual, rather than a general duty to the public at large. *Johnson,* 164 Wn. App. at 748. General duties to the public are governmental functions "'[g]enerally performed exclusively by governmental entities'" and involve "ensuring compliance with state law, issuing permits, and performing activities for the public welfare." *Sunshine Heifers, LLC v. Wash. State Dep't of Agric.*, 188 Wn. App. 960, 967, 355 P.3d 1204 (2015) (alteration in original) (quoting *Fabre v. Town of Ruston*, 180 Wn. App. 150, 159, 321 P.3d 1208 (2014)). Governmental functions are not subject to negligence liability. *Id.* at 968.

There are four exceptions to the public duty doctrine, one of which involves the government's failure to enforce the law. *Donohoe v. State*, 135 Wn. App. 824, 833, 142 P.3d 654 (2006). That exception requires that governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, that governmental agents fail to take corrective action despite a statutory duty, and that the plaintiff is within the class the statute intended to protect. *Ehrhart v. King County*, 195 Wn.2d 388, 402, 460 P.3d 612 (2020).

Here, the Board, as the state agency responsible for cannabis regulation, was performing a governmental function established in statute for the common good of Washington residents so the public duty doctrine defense applies. And Arky fails to show that the failure-to-enforce exception to the public duty doctrine applies. As discussed above, the Board's decision not to forfeit Washington OG's license was consistent with the governing statute and regulation. Therefore, the Board did not fail to take a required corrective action. Because the public duty doctrine applies, there is no need to reach a determination on the elements of negligence.[1]

CONCLUSION

We affirm.

---

[1] Arky argues that the trial court erred by considering the first declaration of the Board's deputy director of licensing, arguing she was not an expert and her declaration contained legal conclusions, hearsay, and statements for which she had no personal knowledge. Although we think it is clear that the deputy director qualified as an expert, we need not reach this issue because we do not rely on the contested portions of the declaration to resolve this case. Instead, we rely only on uncontested facts.

No. 60553-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

CHE, J.